# EXHIBIT 3

**United States Department of Justice "Statement of Interest Supporting Motions to Remand Filed by State Attorneys General"** *Conn. v. McGraw-Hill Cos.*, **No. 3:13-cv-00311, ECF No. 35 (D. Conn. Mar. 29, 2013)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT,

  *Plaintiff*,

  v.

THE MCGRAW-HILL COMPANIES, INC. AND STANDARD & POOR'S FINANCIAL SERVICES LLC,

  *Defendants*.

CIVIL ACTION NO.:
3:13-CV-00311 (SRU)

MARCH 29, 2013

# UNITED STATES OF AMERICA'S
# STATEMENT OF INTEREST
# SUPPORTING MOTIONS TO REMAND
# FILED BY STATE ATTORNEYS GENERAL

STUART F. DELERY
  *Acting Assistant Attorney General*
  *Civil Division*
  *United States Department of Justice*
MAAME EWUSI-MENSAH FRIMPONG
  *Deputy Assistant Attorney General*
MICHAEL S. BLUME
  *Director, Consumer Protection Branch*
ARTHUR R. GOLDBERG
  *Director, Federal Programs Branch*
JAMES T. NELSON
BRADLEY COHEN
JENNIE KNEEDLER
SONDRA MILLS
THOMAS D. ZIMPLEMAN
  *Trial Attorneys*

ANDRÉ BIROTTE JR.
  *United States Attorney*
  *Central District of California*
GEORGE S. CARDONA
  *Chief Assistant United States Attorney*
LEON W. WEIDMAN
  *Chief, Civil Division*
ANOIEL KHORSHID
RICHARD E. ROBINSON
  *Assistant United States Attorneys*

I.  **INTEREST OF THE UNITED STATES**

Defendants McGraw-Hill Companies, Inc., and Standard & Poor's Financial Services LLC (hereafter, collectively, "S&P"), contend that state-law claims asserted against them by Connecticut and other States throughout the country are properly removed because (a) state-court consideration of those claims would "disrupt and supplant" the regulation of S&P by the Securities & Exchange Commission ("SEC") pursuant to the Credit Rating Agency Reform Act of 2006 ("CRARA"); and (b) the state-law claims require "evaluation and adjudication of the scope and nature" of CRARA's regulatory scheme "in order to determine whether the relief sought by the State[s] is available to [them] and consistent with the United States Constitution."  Notice of Removal at 2.  The United States has a substantial interest in ensuring that straightforward claims of ordinary defensive preemption under CRARA do not improperly result in removal of properly pleaded state-law claims over which there is no federal-question jurisdiction.  The United States has a particular interest in ensuring that the States' cases are not improperly removed given the pendency of its own litigation against S&P on what are truly federal claims, namely, alleged violations of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.[1]  Pursuant to 28 U.S.C. § 517, the United States submits this brief setting

---

[1] FIRREA authorizes the United States Attorney General to seek civil penalties for violations of certain enumerated predicate criminal statutes.  Under the authority of FIRREA, the Attorney General has filed a federal action against S&P in the Central District of California alleging as criminal predicates: (1) mail fraud affecting a federally insured financial institution; (2) wire fraud affecting a federally insured financial institution; and (3) financial institution fraud.  *See* 12 U.S.C. § 1833a(a) & (c); 18 U.S.C. §§ 1341, 1343 & 1344.  The action seeks billions of dollars in penalties based on losses suffered by federally insured financial institutions that invested in Collateralized Debt Obligations with exposure to Residential Mortgage Backed Securities to which S&P is alleged to have
*Continued on next page.*

forth its statement of interest in support of the motions to remand filed by the State Attorneys General.[2]

## II. SUMMARY

Each of the States' lawsuits alleges solely state-law claims, primarily violations of each State's unfair consumer practices or deceptive business practices law, premised on allegations that S&P made false statements regarding its objectivity and independence on which consumers within the states relied in purchasing Residential Mortgage Backed Securities ("RMBS") and/or Collateralized Debt Obligations ("CDOs"). There is no necessary federal component to the state-law claims, and hence no basis for S&P's assertion that the state cases fall within the "special and small category" of cases in which removal may be appropriate where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal law forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Indeed, CRARA explicitly recognizes the continuing validity of state-law claims of the type being pursued by the States against S&P. *See* 15 U.S.C. §

---

awarded inflated ratings. *See* U.S.C. §§ 1833a(b)(1) & (b)(3)(A); 28 C.F.R. § 85.3 (authorizing penalties based on losses resulting from FIRREA violations).

[2] 28 U.S.C. § 517 permits the Attorney General of the United States to send any officer of the Department of Justice to "attend to the interests of the United States in a suit pending . . . in a court of a State . . . ." The submission of a Statement of Interest does not constitute an intervention in this action but is the equivalent of an *amicus curiae* brief. *See Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

78o-7(o)(2) ("Nothing in this subsection prohibits the securities commission (or any agency or office performing like functions) of any State from investigating and bringing an enforcement action with respect to fraud or deceit against any nationally recognized statistical rating organization or person associated with a nationally recognized statistical rating organization.").

In an effort to create a federal component where none exists, S&P asserts that judicial rulings on the state-law claims will require assessment of "the boundaries of both the First Amendment as applied to ratings and CRARA's express prohibition on state regulation of the substance of ratings and rating agency procedures and methodologies." Notice of Removal at 8. The CRARA and First Amendment issues identified by S&P are not inherent in the state-law claims, but rather are potential federal defenses to those claims. Assertions of federal defenses cannot provide a basis for removal of properly pleaded state-law claims. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (emphasis in original); *Chicago Tribune Co. v. Bd. of Trustees of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012) ("*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction").

## III. THE CREDIT RATING AGENCY REFORM ACT OF 2006

Congress enacted CRARA, 15 U.S.C. § 78o-7 *et seq.*, "[t]o improve ratings quality for the protection of investors and in the public interest by fostering accountability, transparency, and competition in the credit rating agency industry." Pub. L. No. 109–291, 120 Stat. 1327, 1327 (2006). "CRARA's 'broad examination authority' permits the SEC 'to examine an NRSRO [Nationally

Recognized Statistical Rating Organization] on a periodic basis for compliance with substantive Commission rules applicable to NRSROs, including rules addressing conflicts of interest and rules prohibiting certain unfair, coercive, or abusive practices.'" *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F.Supp.2d 799, 829 n.27 (N.D. Cal. 2011) (citation omitted).

Two subsections of CRARA define and limit its scope: 15 U.S.C. § 78o-7(c)(1) (an authorization provision) and (c)(2) (a limitation provision). They read as follows:

> (c) Accountability for ratings procedures.
>
> (1) Authority. The Commission shall have exclusive authority to enforce the provisions of this section in accordance with this title . . . with respect to any [NRSRO], if such [NRSRO] issues credit ratings in material contravention of those procedures relating to such [NRSRO], including procedures relating to... conflicts of interest . . .
>
> (2) Limitation. Notwithstanding any other provision of this section, or any other provision of law, neither the Commission nor any State (or political subdivision thereof) may regulate the substance of credit ratings or the procedures and methodologies by which any [NRSRO] determines credit ratings . . . .

15 U.S.C.S. § 78o-7. As recently summarized by the court in *Anschutz Corp.*:

> The Authorization Provision [(c)(1)] gives the SEC exclusive authority to enforce the provisions of the CRARA and rules issued by the SEC, but there is no language to indicate that the SEC's exclusive authority extends to enforcement of claims that arise from sources *other* than the CRARA. The Limitations Provision [(c)(2)] is likewise limited, and prohibits *only* laws that seek to regulate the "substance of credit ratings" or the "procedures or methodologies" by which NRSROs determine credit ratings."

785 F.Supp.2d at 829 (footnote omitted) (emphasis in original).

Two other subsections of CRARA address its interplay with State regulation and enforcement: 15 U.S.C. § 78o-7(o)(1) and (0)(2). They read as follows:

> (o) NRSROs subject to Commission authority
>
> (1) In general
>
> No provision of the laws of any State or political subdivision thereof requiring the registration, licensing, or qualification as a credit rating agency or a [NRSRO] shall apply to any [NRSRO] or person employed by or working under the control of a [NRSRO].
>
> (2) Limitation
>
> Nothing in this subsection prohibits the securities commission (or any agency or office performing like functions) of any State from investigating and bringing an enforcement action with respect to fraud or deceit against any [NRSRO] or person associated with a [NRSRO].

15 U.S.C. § 78o-7.

As discussed below, CRARA creates no federal cause of action that can be brought by state enforcement agencies, and explicitly recognizes the ability of the States to pursue state-law enforcement actions alleging fraud or deceit. Because the States allege only such state-law causes of action, federal-question jurisdiction is lacking. S&P's assertion of a preemption defense under CRARA cannot create federal jurisdiction and, accordingly, removal is improper.

## IV. THERE IS NO PROPER BASIS FOR REMOVAL

### A. The States Assert Only State-Law Causes of Action

In the absence of diversity jurisdiction, actions filed in state court may be removed to federal court only if they "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1441.

1  "Most directly, a case arises under federal law when federal law creates the cause
2  of action asserted." *Gunn*, 133 S. Ct. at 1064. In assessing whether this is the
3  case, courts apply the "well-pleaded complaint" rule, under which "the plaintiff is
4  the master of the claim; he or she may avoid federal jurisdiction by exclusive
5  reliance on state law." *Caterpillar,* 482 U.S. at 392; *see also Beneficial Nat'l Bank
6  v. Anderson,* 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity
7  jurisdiction, a case will not be removable if the complaint does not affirmatively
8  allege a federal claim."). S&P does not argue that the complaints filed by the state
9  Attorneys General assert any federal cause of action. Nor could it, as the
10 complaints assert solely state-law causes of action based on fraud, deceptive
11 business practices, and/or violations of state consumer protection statutes.

### B. The States' Right to Relief Does Not Necessarily Depend on Resolution of a Substantial Question of Federal Law

14 The general rule that there is no federal-question jurisdiction over well-
15 pleaded state-law causes of action is not altered when a defendant asserts a federal
16 defense, including a preemption defense. *See Caterpillar*, 482 U.S. at 393
17 (complaint alleging only well-pleaded state-law claims "may *not* be removed to
18 federal court on the basis of a federal defense, including the defense of pre-
19 emption") (emphasis in original). This case falls within that general rule, and not
20 within the "'special and small category' of cases" recognized by the Court in
21 which "arising under jurisdiction still lies" even where the cause of action "finds
22 its origins in state rather than federal law." *Gunn*, 133 S. Ct. at 1064-65 (quoting
23 *Empire Healthchoice*, 547 U.S. at 699*).* The narrow exception invoked by S&P
24 applies only to cases in which the "state-law claim necessarily raise[s] a stated
25 federal issue, actually disputed and substantial, which a federal forum may
26 entertain without disturbing any congressionally approved balance of federal and
27 state judicial responsibilities." *Grable*, 545 U.S. at 314. Put another way,
28 "federal jurisdiction over a state law claim will lie if a federal issue is: (1)

necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. Only if "all four of these requirements are met" will federal jurisdiction lie over the state-law causes of action. *Id.* Unlike *Grable*, here the state-law claims do not necessarily raise any federal issue, much less one sufficiently substantial.

*Grable* involved real property belonging to Grable & Sons Metal Products, Inc. ("Grable") that the Internal Revenue Service seized to satisfy a federal tax deficiency. Grable received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing ("Darue"). 545 U.S. at 310. Five years later, Grable sued Darue in state court to quiet title. *Id.* at 311. Grable contended that Darue's record title was invalid because the IRS had conveyed the seizure notice to Grable improperly, asserting that the governing statute, 26 U.S.C. § 6335(a), required personal service, not service by certified mail. *Id.* at 310-11. "Whether Grable was given notice within the meaning of the federal statute [was] thus an essential element of its quiet title action." *Id.* at 315. As a result, Grable's "right to relief" depended on a resolution of "the meaning of the federal statute." *Id.* at 312-13 (quoting *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921)).

S&P argues that this case is akin to *Grable* because interpretation of CRARA is essential to resolution of the state-law causes of action. To the contrary, the state-law causes of action are independent of any provision of CRARA, and do not require interpretation of that statute for their resolution. The state-law causes of action are straightforward claims under consumer protection and deceptive business practice statutes. The crux of these claims is that S&P made false representations regarding its own practices. At issue are representations made by S&P itself and whether the facts show those representations to be false. Resolving these issues requires no interpretation of

-7-

CRARA. *See, e.g., Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 674-75 (9th Cir. 2012) (even explicit allegations that misrepresentations violated federal Fair Debt Collection Practices Act did not justify removal of claims alleging violations of Nevada's Deceptive Trade Practices Act); *Baker v. BDO Seidman, L.L.P.*, 390 F.Supp.2d 919, 925 (N.D. Cal. 2005) (States' "[]claims of fraud and deceit and all the other cognate claims derived therefrom are capable of being resolved on state law bases without the interpretation of federal law.").

To the extent S&P is arguing that the States are "artfully pleading" their claims to avoid CRARA or any other federal statutory or constitutional issues, Notice of Removal at 2, S&P misunderstands the law. If the defendant in *Grable* had never removed the case to federal court and never mentioned the federal statute at issue, the plaintiff would still have required a favorable interpretation of federal law to succeed on its quiet title claim. In contrast, here, if S&P had never raised CRARA or the First Amendment as an issue, the States "would not have required an interpretation of federal law in order to succeed on their claims." *Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 202 (S.D.N.Y. 2009) (rejecting claim that plaintiffs were "artfully pleading" their claims to avoid implicating Truth-in-Lending Act). Alternatively, a state court could rule on the state-law causes of action in S&P's favor wholly as a matter of state law. This too demonstrates that the federal issues asserted by S&P not only are not "necessarily" presented, but may never be presented at all.

S&P argues that either the state-law causes of actions themselves, or the injunctive relief sought by certain of the States as a remedy, would so compromise CRARA and the SEC's role under CRARA in regulating the credit rating agencies that they cannot be allowed to proceed. Notice of Removal at 5-6. These defenses, even if credited, would not establish a basis for federal jurisdiction under *Grable*. In their complaints, the state Attorneys General neither challenge

the SEC's authority under CRARA to register and regulate any of the credit rating agencies nor seek injunctive relief premised on any violation by S&P or other credit rating agencies of any federal law. Rather, the States seek to prove under state law that S&P committed fraud or otherwise violated state consumer protection or deceptive business practices laws, and seek monetary penalties, as well as limited injunctive relief, to remedy these state law violations. S&P's arguments do nothing to alter the nature of the state-law claims, but rather are straightforward claims of defensive preemption, that is, that the States' actions, or certain aspects of the relief sought by those actions, should be preempted by the scope and nature of CRARA and its regulatory scheme. S&P's assertion of a preemption defense does not bring the state-law claims within *Grable*'s narrow holding, which is limited to state-law claims that necessarily raise federal issues independent of any asserted preemption defense.

Even if the States' complaints necessarily raised a federal issue, it would not meet *Grable*'s substantiality requirement. *Grable* emphasized the importance of providing a federal forum for "substantial questions of federal law." 545 U.S. at 312; *see also Id.* at 513 (rejecting "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door"); *Gunn*, 133 S. Ct. at 1066 ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."). The Court has subsequently confirmed that a crucial factor supporting the result in *Grable* was the presence of a "nearly pure issue of law" that "could be settled once and for all and thereafter would govern numerous tax sale cases." *Empire Healthchoice,* 547 U.S. at 700 (internal quotation marks and citation omitted). Here, by contrast, as in *Empire Healthchoice*, any federal issue posed by the States' claims is "fact-bound and

-9-

UNITED STATES OF AMERICA'S STATEMENT OF INTEREST

situation-specific." *Id.* at 701. There is no "nearly pure question of law" for a federal court to decide, much less one that, once settled, is likely to govern the outcome of numerous other cases. *Id.*[3]

Because the States' claims do not "necessarily raise" a federal issue, much less one sufficiently substantial, the *Grable* test for federal-question jurisdiction is not met.

### C. S&P's Asserted Preemption and First Amendment Defenses Do Not Provide a Basis for Removal

S&P's claim that the State cases "threaten[] to disrupt and supplant a complex and exclusive federal regulatory scheme enacted by Congress," Notice of Removal at 2, is a claim that the State cases are preempted by CRARA. Similarly, S&P's claim that "credit ratings, as opinions on matters of public concern, are entitled to First Amendment protections," Notice of Removal at 7, asserts a federal Constitutional defense. As noted above, however, well-pleaded state-law claims "may not be removed on the basis of a federal defense, including the

---

[3] In support of its claim that substantiality is present, S&P argues that the CRARA issues to which it points "have not been settled by previous decisions on the subject" and, to the contrary, "courts around the country" have "very recently wrestled with, and continue to wrestle with, the very provisions of CRARA at issue here." Memorandum in Opposition to Plaintiffs' Motion for Remand at 22. Demonstrating that the CRARA issues identified by S&P are raised not by the state-law causes of action themselves, but rather by S&P's own efforts to assert a preemption defense, the cases S&P cites in support of this claim all address the identified CRARA issues in the context of similar assertions of preemption defenses. *See Genesee Cnty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F.Supp.2d 1082, 1244 (D.N.M. 2011) ("The Rating Agency Defendants argue that CRARA preempts the Plaintiffs' claims against them."); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 580 F. Supp. 2d 630, 651(S.D. Ohio 2008) ("Moody's argues that [CRARA] . . . preempts the application of any state securities laws."); *Anschutz Corp.*, 785 F. Supp. 2d at 828-30.

1 defense of pre-emption, even if the defense is anticipated in the complaint and
2 both parties admit that the defense is the only question truly at issue." *Franchise*
3 *Tax Bd. of Calif. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 2 (1983).
4 "*Grable* does not alter the rule that a potential federal defense is not enough to
5 create federal jurisdiction under § 1331." *Chicago Tribune*, 680 F.3d at 1003.[4]
6 ///
7 ///

---

[4] The Court has recognized a very-limited exception to the general rule that a well-pleaded complaint asserting only state-law causes of action will not be removed that applies in those instances when a federal statute that creates a federal cause of action is construed to transform state-law causes of action, for jurisdictional purposes, into federal claims that may be properly removed. *See Beneficial Nat'l Bank*, 539 U.S. at 7-8 ("When the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b)."). S&P has correctly disavowed reliance on the doctrine of complete preemption as a basis for federal jurisdiction here. Defendants' Memorandum in Opposition to Plaintiff's Motion for Remand at 5 n.5. Far from supplanting all state-law causes of action and replacing them with an exclusive federal cause of action, CRARA contains an express limitation on its scope that recognizes the continuing validity of state enforcement actions alleging fraud or deceit. *See* 15 U.S.C. § 78o-7(o)(2).

V. CONCLUSION

"It is tempting to find federal jurisdiction every time a multi-billion dollar case with national implications arrives at the doorstep of a federal court. The jurisdiction of the federal district courts, however, is left to Congress, not to the discretion of the courts themselves." *Greenwich Fin. Servs. Distressed Mortg. Fund 3, LLC*, 654 F.Supp.2d at 204. This fundamental principle applies here. Based on the nature of the causes of actions alleged by the States, and the controlling precedents, there is no federal-question jurisdiction justifying removal, and the States' complaints should be remanded.

DATED: March 29, 2013

Respectfully submitted,

STUART F. DELERY
  *Acting Assistant Attorney General*
  *Civil Division*
  *United States Department of Justice*
MAAME EWUSI-MENSAH FRIMPONG
  *Deputy Assistant Attorney General*
MICHAEL S. BLUME
  *Director, Consumer Protection Branch*
ARTHUR R. GOLDBERG
  *Director, Federal Programs Branch*
JAMES T. NELSON
BRADLEY COHEN
JENNIE KNEEDLER
SONDRA MILLS
THOMAS D. ZIMPLEMAN
  *Trial Attorneys*

ANDRÉ BIROTTE JR.
  *United States Attorney*
  *Central District of California*

     //s//
_____

GEORGE S. CARDONA
  *Chief Assistant United States Attorney*
LEON W. WEIDMAN
  *Chief, Civil Division*
ANOIEL KHORSHID
RICHARD E. ROBINSON
  *Assistant United States Attorneys*

  Room 7516 Federal Building
  300 North Los Angeles Street
  Los Angeles, California 90012
  Emails:
    George.S.Cardona@usdoj.gov
    Anoiel.Khorshid@usdoj.gov
  Tel. Nos.: (213) 894-8323/6086
  Facsimile: (213) 894-7819 [Main