**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

Attorney General Jim Hood, *ex rel.*
State of Mississippi,

        Plaintiff,

    v.                          Case No.: 3:11-cv-00343-HTW-LRA

The McGraw-Hill Companies, Inc.,
Standard & Poor's Financial Services, LLC,
Moody's Corporation and Moody's Investors
Service, Inc.,

        Defendants.

**STATE OF MISSISSIPPI'S MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONSE TO S&P'S MARCH 21, 2013 MOTION TO STAY**

## I.    INTRODUCTION

The State of Mississippi ("State" or "Mississippi") opposes defendants The McGraw-Hill

Companies, Inc. and Standard & Poor's Financial Services LLC's (collectively, "S&P") March

21, 2013 motion to stay proceedings ("Motion to Stay All Proceedings") in connection with

Mississippi's remand motions.  S&P's Motion to Stay All Proceedings asks this Court to hold in

abeyance all proceedings in this case until the Judicial Panel on Multidistrict Litigation ("Judicial

Panel") renders a decision on S&P's motion to transfer and consolidate this case into a

multidistrict litigation ("MDL") that would be comprised of multiple state attorney general

actions to enforce state consumer protection laws.  S&P has, *de facto*, attempted to grant this stay

to itself by failing to file a timely response to Mississippi's 2013 motion to remand on April 3,

2013.  S&P's conduct improperly and prejudicially delays adjudication of Mississippi's pending

2011 and 2013 motions to remand.  This Court, as well as other courts in the Southern District of

Mississippi, have routinely denied requests to stay remand proceedings, and S&P has not demonstrated that exceptional circumstances warranting a stay exist here.

For these reasons, Mississippi respectfully requests that this Court deny S&P's Motion to Stay All Proceedings and rule at its earliest convenience on S&P and Moody's fully-briefed request for remand-related discovery, set a schedule to complete briefing on Mississippi's 2011 motion to remand, grant Mississippi's 2013 motion to remand as unopposed or order S&P to immediately file its response thereto, and, ultimately, remand this matter to the Chancery Court of the First Judicial District of Hinds County, Mississippi.

## II.   PROCEDURAL BACKGROUND

### A.   Procedural Background in the Mississippi Case

On May 10, 2011, the State of Mississippi, in its sovereign authority, brought a *parens patriae* consumer protection enforcement action against S&P and Moody's (collectively, "Defendants") in the Chancery Court of the First Judicial District of Hinds County, Mississippi. Mississippi's lawsuit alleges that S&P and Moody's engaged in a similar pattern and practice of deceptive conduct involving the systematic and widespread misrepresentation of their services as independent, objective, and competent to rate certain mortgage-backed securities, in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1 through 75-24-175 (2012) ("MSCPA").  On June 7, 2011, Defendants jointly filed a Notice of Removal ("2011 Notice of Removal"), alleging federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2005) ("CAFA"), and on diversity grounds.  The 2011 Notice of Removal did not argue for removal as a CAFA "mass action;" rather, the 2011 Notice expressly argued for removal as a CAFA "class action."  ECF No. 1.  Mississippi subsequently filed a Motion to Remand ("2011 Motion to Remand"), arguing that Defendants failed to meet the requirements

for removal as a CAFA class action or on diversity grounds.  ECF No. 15.  On August 19, 2011,

Defendants jointly served the State with remand-related discovery requests and jointly moved for

additional time to respond to Mississippi's remand motion, alleging the need for remand-related

discovery to determine whether the State or other entities/individuals are the real parties in

interest.  ECF Nos. 21, 23, 24.  Although Mississippi responded to Defendants' remand-related

discovery requests on September 2, 2011, it opposed Defendants' motion for additional time to

respond to the 2011 Motion to Remand and request for remand-related discovery.  ECF No. 26.

Defendants' joint motion for additional time and request for remand-related discovery has been

fully briefed since September 2011 and is ripe for consideration.

### B.    Other Attorney General Enforcement Actions against S&P

Mississippi's 2011 lawsuit against S&P and Moody's was patterned after similar

sovereign enforcement lawsuits that the Attorney General of Connecticut filed against S&P and

Moody's on March 10, 2010, in which Connecticut alleged that misrepresentations by S&P and

Moody's regarding their services violated Connecticut's consumer protection statute.

Mississippi and Connecticut both alleged violations of their consumer protection statutes, and

both states' complaints contained parallel—and in some cases, identical—factual allegations.

On April 9, 2010, S&P and Moody's removed Connecticut's case to federal court, alleging the

same grounds as they did a year later in Mississippi: federal jurisdiction under CAFA and

diversity.  The Connecticut federal court rejected S&P and Moody's arguments and remanded

the lawsuits to state court on January 5, 2011.  *Conn. v. Moody's Corp.*, No. 3:10-cv-546, 2011

WL 63905 (D. Conn. Jan. 5, 2011).

S&P and Moody's then moved to strike Connecticut's complaints, relying on the very

same federal preemption and First Amendment arguments that S&P makes in its 2013

3

Supplemental Notice of Removal in this case (ECF No. 34).  *See* Def.'s Mem. Supp. Mot. Strike

(Connecticut) at 1-3, 24 (arguing that Connecticut's case is "expressly preempted by federal law

and incompatible with the free speech provisions of the [Constitution]") (Ex. 1)[1].  On May 10,

2012, the Connecticut state court rejected those arguments and denied S&P's motion to strike the

complaint.  *See Conn. v. Moody's Corp.,* No. HHD-CV-10-6008836S, 2012 WL 2149408, at *8-

9 (Conn. Super. Ct. May 10, 2012); *Conn. v. The McGraw-Hill Cos.*, No. HHD-CV-10-

6008838S, slip op. at 1 (Conn. Super. Ct. May 10, 2012) (adopting reasoning of *Conn. v.

Moody's*).  The Connecticut cases have proceeded to discovery.

    On January 25, 2012, the Attorney General of Illinois filed a third sovereign enforcement

action against S&P (nearly two years after Connecticut and nearly a year after Mississippi),

similarly alleging that S&P's misrepresentations violated Illinois' consumer protection law.  By

contrast to the Mississippi and Connecticut cases, S&P did not remove the Illinois lawsuit (at

that time) and instead filed a motion to dismiss on April 23, 2012.  S&P asserted the same

arguments as it advanced in its motion to strike Connecticut's complaint and in S&P's

subsequent 2013 Supplemental Notice of Removal in the instant case.  *See, e.g.*, S&P's Mot.

Dismiss (Illinois) at 2 (Ex. 2).  As in Connecticut, the Illinois state court rejected S&P's

arguments and denied S&P's motion to dismiss.  *See Ill. v. McGraw-Hill Cos.*, No. 12 CH

02535, 2012 WL 5440768, at p. 12 (Ill. Cir. Ct. Nov. 7, 2012).  The case has proceeded to

discovery.

    On February 5, 2013, the Attorneys General of Arizona, Arkansas, Colorado, Delaware,

the District of Columbia, Idaho, Iowa, Maine, Missouri, North Carolina, Pennsylvania,

Tennessee, and Washington each filed sovereign enforcement actions against S&P for violations

---

[1] All Exhibits referenced herein are attached to the Index of Exhibits filed concurrently with
this response.

of each state's consumer protection statutes.[2]  The Attorney General of South Carolina filed a sovereign enforcement action on February 13, 2013.  These new enforcement actions similarly assert that S&P violated state consumer protection laws by misrepresenting that its services were objective and independent.

> **C.    S&P's 2013 Notices of Removal, the States' 2013 Motions to Remand, S&P's Motion to Transfer, and S&P's 2013 Motions to Stay**

On March 6, 2013, S&P sought to evade (or, in Mississippi's case, continue to evade) state jurisdiction over the attorney generals' state law claims by removing all the sovereign enforcement actions to federal court (collectively, "2013 Notices of Removal").[3]  The 2013 Notices of Removal incorrectly allege the existence of a federal question because, when viewed together, S&P incorrectly claims that the attorney general actions (1) usurp federal regulatory authority (under the Credit Rating Agency Reform Act of 2006, 15 U.S.C. §§ 78o-7 through 78o-9 (2013) ("CRARA")); and (2) violate S&P's First Amendment rights.  *See* S&P's 2013 Supplemental Notice of Removal, ECF No. 34.  Mississippi filed its motion to remand in response to S&P's 2013 Supplemental Notice of Removal ("2013 Motion to Remand") on March 20, 2013, arguing that S&P's 2013 Supplemental Notice of Removal was untimely because S&P could have brought these arguments in connection with its 2011 Notice of Removal and that the 2013 Supplemental Notice of Removal was improper because federal defenses cannot be used to create federal question jurisdiction.[4]  *See* Miss.' Mem. Supp. Mot. Remand, ECF No. 37.

---

[2] Some states also alleged violations of state securities laws.

[3] Moody's did not join in the 2013 removal notice in Mississippi.

[4] All the states, except the District of Columbia, filed motions to remand.

S&P then filed motions to stay each of the federal court proceedings, including Mississippi's,[5] pending resolution of S&P's motion to transfer these sovereign enforcement actions for coordination and consolidation.  On March 15, 2013, the Connecticut federal court granted Connecticut's motion for expedited review of its remand motion and ordered S&P to show cause by March 25, 2013 why the case should not be remanded to state court.  On March 29, 2013, the United States Department of Justice filed a "Statement of Interest Supporting Motions to Remand Filed by State Attorneys General" in the Connecticut case, arguing that S&P has failed to establish a basis for federal question jurisdiction.  *See Conn. v. McGraw-Hill Cos.*, No. 3:13-cv-00311, ECF No. 35 (D. Conn. Mar. 29, 2013) (Ex. 3).  On March 20, 2013, the Illinois federal court denied S&P's motion to stay Illinois' motion to remand pending S&P's motion to transfer and set a briefing schedule on the remand motion, with a scheduled ruling set for May 15, 2013.

The States uniformly opposed S&P's motion to transfer, arguing that the Judicial Panel should defer ruling because there is no significant efficiency in forming an MDL to adjudicate the states' 2013 remand motions, and, in the alternative, if the Judicial Panel does not defer ruling, that the Judicial Panel should deny S&P's transfer motion because S&P has not demonstrated that transfer of these cases would satisfy the criteria set forth in 28 U.S.C. § 1407. *See* Miss. Resp. S&P's Mot. Transfer, ECF No. 44 (J.P.M.L. Apr. 2, 2013) (Ex. 4).  In its opposition brief, Mississippi also stated that it disputes Defendants' assertion that Mississippi's case qualifies as a class action under CAFA but that, if the Judicial Panel grants S&P's motion to transfer the other attorney general cases, Mississippi requests transfer of its entire case for

---

[5] Moody's did not join in the motion to stay proceedings.

consideration of both the 2011 and 2013 Motions to Remand, if such motions remain pending at the time of transfer.  *See id.* n.10 (citing 28 U.S.C. § 1332(d)(11)(C)(i)).

On April 2, 2013, Moody's opposed the transfer and asked the Judicial Panel to sever Moody's from Mississippi's case against S&P.  Moody's transfer opposition misrepresents Mississippi's position regarding consent to transfer under CAFA as well as the law governing such transfers.  Although Mississippi opposes transfer and consolidation of the attorney general actions, in the event that the Judicial Panel determines transfer is appropriate and this Court has not yet ruled on the 2011 and 2013 Motions to Remand, the State, as noted, has requested that the Mississippi action be consolidated along with the other states' cases.  Finally, Mississippi believes there are key factual and legal issues common to its claims against both Moody's and S&P.

On April 3, 2013, rather than file a timely response to the State's 2013 Motion to Remand, S&P filed a motion to stay its response or, in the alternative, for extension of time. ECF No. 41.

## III.   ARGUMENT

### A.   Courts in this District Routinely Deny Requests to Stay Remand Proceedings Pending a Ruling by the Judicial Panel on Transfer

This Court has made clear that "a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a party's motion to the Judicial Panel for transfer and consolidation."  *Hood ex rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 541 (S.D. Miss. 2006) (Wingate, J.); *accord R.N.R. ex rel. Rogers v. Yamaha Motor Corp., U.S.A.*, No. 3:09-cv-608, 2010 WL 1794391, at *2 (S.D. Miss. Apr. 30, 2010) (Wingate, J.) (same).  The Judicial Panel's own rules confirm that a pending motion to transfer under 28 U.S.C. § 1407 "does not affect or suspend orders and pretrial proceedings in any

pending federal district court action" and "does not limit the pretrial jurisdiction of that court."
J.P.M.L. Rule 2.1(d).

The only proceedings currently pending in this Court are those related to the disposition
of Mississippi's 2011 and 2013 Motions to Remand.  Contrary to S&P's argument, courts
routinely deny stays in circumstances where the pending motions relate to remand.  In the
Southern District of Mississippi, the majority of motions to stay remand proceedings while a
Section 1407 motion to transfer is pending have been denied.  *See Craft v. United Ins. Co. of
Am.*, No. 4:01-CV-339-LN, 2002 WL 32509283, at *1 (S.D. Miss. Jan. 17, 2002) (citing
*Dantzler v. Am. Home Prods.*, No. 4:00-CV-68-LN (S.D. Miss. Sept. 21, 2000) (identifying
multiple cases in which courts in the Southern District of Mississippi have denied motions to
stay remand proceedings pending a decision from the Judicial Panel on transfer)); *see also Miss.
ex rel. Hood v. Gulf Coast Claims Facility*, No. 3:11-CV-00509, 2011 WL 5551773, at *1 (S.D.
Miss. Nov. 15, 2011) (denying a stay and deciding the remand motion despite the fact that MDL
conditional transfer order had been issued); *Caldwell v. Am. Home Prods. Corp.*, 210 F. Supp. 2d
809, 813 (S.D. Miss. 2002) (denying motion for stay pending Judicial Panel's decision on
transfer and granting motion to remand).  In the two cases mentioned above decided by this
Court, the Court issued rulings denying requests to stay remand proceedings pending a decision
by the Judicial Panel to transfer under Section 1407.  *See Microsoft*, 428 F. Supp. 2d at 541
(Wingate, J.); *R.N.R.*, 2010 WL 1794391, at *2-*3 (Wingate, J.).[6]  Mississippi respectfully
requests that the Court follow the majority of case law in this District, including its own prior
decisions, and deny S&P's request for a stay.

---

[6] S&P failed to identify either of these cases in its stay motion.

**B.      The Court Should Not Consider S&P's Request for a Stay Unless and Until the Court Determines that There Is Federal Jurisdiction over this Case**

The Supreme Court has long held that "[w]ithout jurisdiction [a federal] court cannot proceed at all in any cause." *Ex parte McArdle*, 74 U.S. 506, 514 (1868).  Indeed, 28 U.S.C. § 1447(c) dictates that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  This argues in support of Mississippi's request that the Court order the parties to complete briefing on both the 2011 and 2013 Motions to Remand immediately, rather than granting S&P's request to further delay the Court's consideration of these critical jurisdictional questions.

A number of courts in this District have expressly held that "motions to remand are [to] be considered prior to disposing of motions to stay pending MDL transfer" because, "if the federal court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL."  *Craft*, 2002 WL 32509283, at *1 (citing cases); *see also Bell v. Prudential Ins. Co.*, No. 3:97-cv-340-BN, 1997 WL 33708408, at *4 (S.D. Miss. Sept. 4, 1997) ("Because the Motion to Remand challenges the subject matter jurisdiction of this Court, the Court concludes that the Motion to Remand must be considered initially to determine whether this Court, or any other federal district court, has jurisdiction to hear this matter.").  Courts outside this District are in accord.  *See, e.g.*, *Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 521 (E.D. Pa. 2005) ("[i]f this Court is to adjudicate any pretrial matters, it must satisfy itself that it has the power to do so. . . .  Therefore, granting a stay . . . without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law . . . ."); *Stern v. Mut. Life Ins. Co. of N.Y.*, 968 F. Supp. 637, 639 (N.D. Ala. 1997) ("[i]f the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay").  Because Mississippi's 2011 and 2013 Motions to Remand challenge the Court's jurisdiction over this case, the State

9

respectfully requests that the Court consider the State's remand motions before adjudicating
S&P's request for a stay.

### C.     Courts Grant Stays Only in Exceptional Circumstances that Do Not Exist Here

Where courts in this District have not first disposed of a motion to remand challenging
jurisdiction, they have made it clear that a stay should only be considered in "exceptional"
circumstances. *Craft*, 2002 WL 32509283, at *2.  Such circumstances may exist where the
remand issue is common to other cases pending before the MDL transferee court and a stay
would conserve judicial resources and avoid the risk of inconsistent rulings. *See id.; R.N.R.*,
2010 WL 1794391, at *2; *see also Microsoft*, 428 F. Supp. 2d at 541 ("a stay is appropriate when
it serves the interests of judicial economy and efficiency").   This case does not satisfy these
"exceptional" circumstances.  First, Mississippi's case presents a number of issues that are not
common to the other cases that S&P also seeks to transfer:  Mississippi's case is the only one of
the removed 17 attorney general actions where there is an additional and pending remand motion
(and remand-related discovery request) pertaining to removal under CAFA and on diversity
grounds and implicates a different defendant (Moody's), and Mississippi's 2013 Motion to
Remand involves timeliness and procedural arguments that are not common to 14 of the 16 other
attorney general actions.  It would be both appropriate and judicially efficient for this Court to
resolve the 2011 Motion to Remand together with the 2013 Motion to Remand, and to do so
prior to the Judicial Panel's consideration of the transfer motion.  Second, even if the only
remand issue in Mississippi's case were the one common to all the states (the merits of S&P's
newly-asserted argument for federal question jurisdiction), a stay pending transfer still would not
promote the interests of judicial economy and consistency because S&P's 2013 Supplemental
Notice of Removal is facially deficient and can easily and quickly be disposed of by this Court.

10

> **1.      Mississippi's Remand Posture and Legal Arguments Are Unique and Are Most Appropriately and Efficiently Decided by this Court**

S&P and Moody's jointly removed Mississippi's case in 2011, asserting federal jurisdiction under CAFA and on diversity grounds.[7]  Mississippi moved for remand, and S&P and Moody's jointly moved for additional time to respond to Mississippi's remand motion, alleging the need for remand-related discovery to determine whether the State or other entities/individuals are the real parties in interest.  S&P and Moody's joint motion for more time and remand-related discovery has been fully briefed since September 2011 and is currently pending before the Court.  *See supra* Section II.A.  S&P's 2013 Notices of Removal, issued to all 17 states, do not involve CAFA or diversity arguments, requests for remand-related discovery, nor do they implicate Moody's as a co-defendant.

The issues presented by S&P's 2013 Notices of Removal also are not common to 14 of the 16 other attorney general actions.  Mississippi was the second state to sue, after Connecticut, and has had a case pending against S&P since May 2011.  Mississippi's 2013 Motion to Remand raises unique timeliness and other procedural arguments that bar S&P's attempt to assert federal question jurisdiction nearly two years after Mississippi first filed its lawsuit.  *See* Miss.' Mem. Supp. Mot. Remand at 5-10, ECF No. 37.  These arguments do not apply to (and thus were not raised by) the states that sued S&P in 2013 and that S&P also seeks to transfer.[8]

In light of issues involving remand and co-defendants that are unique to Mississippi's case and thus require individualized treatment, it would better serve the interests of judicial

---

[7] Connecticut's (separate) cases against S&P and Moody's were removed on the same grounds in 2010, but the federal district court rejected those grounds, and the cases were remanded to state court in early 2011.

[8] Connecticut and Illinois, the other two states to file before 2013, also make similar timeliness and procedural arguments in their remand motions and are on expedited schedules for consideration of those motions.  *See supra* Section II.C.

economy for this Court to deny the stay and rule on the jurisdictional challenges now.  *See Craft*, 2002 WL 32509283, at *2 ("motions to remand that are based on issues unique to an action are well suited for decisions prior to the 1407 transfer") (quotation marks and citation omitted).  It would also serve the interests of efficiency for this Court to consider the two remand motions together and dispose of the State's jurisdictional challenge against all Defendants at the same time.

> ### 2.    Even If the Only Remand Issue in Mississippi's Case Were the Merits of the Federal Question Argument Common to All States, a Stay of the Remand Proceedings Pending a Transfer Decision Still Would Not Promote Judicial Economy or Consistency

Even if the only remand issue in Mississippi's case were the one common to all the states (*i.e.*, the merits of S&P's newly-asserted arguments for federal question jurisdiction), a stay pending transfer still would not promote the interests of judicial economy or consistency.  As explained in greater detail in Mississippi's 2013 Motion to Remand, *see* Miss.' Mem. Supp. Mot. Remand, ECF No. 37 (incorporated herein by reference), and as argued by the other states and by the United States Department of Justice, *see supra* Section II.C., S&P has failed to establish a viable argument in support of federal question jurisdiction.  S&P's asserted basis for federal question jurisdiction does not arise from Mississippi's complaint, as the law requires.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").  Rather, S&P's argument in support of federal question jurisdiction is comprised of federal defenses, which cannot be used to create a federal question.  *See* Miss. Mem. Supp. Mot. Remand at 11-12, ECF No. 37.  Further, S&P cannot meet the high standard for permitting federal review of an exclusively state law claim.  *See id.* at 13-20 (explaining that

S&P has not asserted (nor could it) that the State's claims are completely preempted or demonstrated that the claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing the balance of federal and state judicial responsibilities). Thus, S&P's 2013 Supplemental Notice of Removal is facially deficient and can easily and quickly be disposed of by this Court.

In a situation such as this, no judicial economy is achieved by staying the remand proceedings and transferring these jurisdictional questions to an MDL court. *See Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2011) (one reason a federal district court should "make a preliminary assessment of the jurisdictional issue" in determining whether to stay a motion to remand pending transfer is because this approach promotes "judicial economy." "If the limited review reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the [transferor] court . . . should dismiss the case rather than waste the time of another court.") (quotation marks and citation omitted); *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1183 (S.D. Ala. 2006) ("[Any] anticipated economies of scale [from adjudicating several motions to remand all at once] disappear when the motions to remand are straightforward and easily resolved. . . . Judicial economy thus remains unimproved by even a large-scale transfer of cases with identical, plainly meritorious motions to remand."). This Court has expressed agreement: "[T]his court's adjudication of the merits of plaintiffs' motion [to remand] will save another court, perhaps burdened due to MDL transfers, from having to expend its limited time [and] resources on this matter." *R.N.R.*, 2010 WL 1794391, at*3. The judicial savings are even greater here, where there is no existing MDL and no potential transferee court with more experience handling the state actions or knowledge of the remand issues than this Court.

Further, at least some of the other 2013 attorney general motions to remand are scheduled to be fully briefed, argued, and resolved in those federal district courts before the Judicial Panel decides S&P's motion to transfer.  *See supra* Section II.C (explaining that the Illinois federal court has issued an order stating that it is scheduled to rule on Illinois' remand motion on May 15, 2013, and the Connecticut federal court ordered expedited review of the remand motion). For these reasons, the interests of judicial economy weigh in favor of this Court ordering prompt briefing and resolution of Mississippi's 2011 and 2013 Motions to Remand.

In addition, given that S&P's 2013 removal on federal question grounds is facially deficient, there is little risk of inconsistent rulings among the different district courts.  In any event, since at least some federal courts are poised to rule on the remand motions before the Judicial Panel considers the transfer motion, S&P will be required to contend with multiple rulings whether or not this Court stays the remand proceedings.  As such, this Court should not delay its own consideration of the 2011 and 2013 Motions to Remand.

Finally, S&P's arguments about judicial economy and consistency mainly concern the merits of Mississippi's (and the other states') claims, *see* S&P's Mem. Supp. Mot. Stay at 7-8, 11, and, thus, presume that a federal court has jurisdiction over Mississippi's state law claims.  In deciding whether to rule on a motion to remand, the court is to consider the judicial economy of centralized resolution of the *remand issues*, not the merits of the actions.  *See Craft*, 2002 WL 32509283, at *2; *R.N.R.*, 2010 WL 1794391, at *2.[9]  Even if it were appropriate to presume

---

[9] S&P argues that in *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990), the court "issu[ed] a stay pending [a] transfer decision citing concerns of 'consistency as well as economy.'"  S&P's Mem. Supp. Mot. Stay at 11.  S&P mischaracterizes *In re Ivy*.  The court in that case did not consider the question of whether the initial district court had to defer to the MDL process and stay action on a pending motion to remand, the issue was whether the Judicial Panel properly transferred a particular case to the MDL court when there was a remand motion pending.  While the court held that the Judicial Panel did have power to transfer the case in that situation, the court's reasoning

federal jurisdiction and weigh the efficiency of staying hypothetical pre-trial proceedings on the merits of Mississippi's case pending a transfer decision, S&P has failed to demonstrate the judicial economy that would be achieved by such a stay. State attorneys general, as S&P itself has now conceded on multiple occasions, are uniquely well-suited to coordinating their pre-litigation efforts, including discovery, *see, e.g.*, S&P's 2013 Supplemental Notice of Removal, ECF No. 34, ¶¶ 3, 11-13, without the assistance of an MDL court. Attorneys general have a long track record of effective cooperation in large-scale investigations in a broad range of contexts, including the enforcement of state consumer protection laws.[10] The Judicial Panel has routinely found the economy of transfer to be lacking in circumstances such as these where "suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery," including "the cooperation of the parties." *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); *accord In Re: Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*, MDL No. 2392, 2012 WL 4470412, at *1 (J.P.M.L. Sept. 28, 2012) (declining to create an MDL where "[v]arious mechanisms are

---

makes clear that it should only do so where there is "significant economy and efficiency" in having an MDL court resolve the jurisdictional objection. *Id.* ("*the jurisdictional issue* in question . . . . involves . . . common questions of law and fact, some or all of which relate[d] to the [existing MDL] class action and settlement, and there are real economies in transferring such cases to [the existing MDL court], [which] has been handling the . . . litigation for several years") (emphasis added) (citations omitted).

[10] Most notably, 49 state attorneys general settled claims against the nation's five largest mortgage servicers for $25 billion in 2012. Many other examples of multistate cooperation exist, including: 37 attorneys general completed an investigation of (using a large on-line database of documents) and settled claims against Janssen Pharmaceuticals for their alleged unlawful marketing of the antipsychotic drug, Risperdal in 2012; 46 state attorneys general settled claims against Lender Processing Services, Inc. for faulty "robo-signing" and servicing practices in bankruptcy and foreclosures in 2013; 30 attorneys general settled claims against Toyota for its alleged failure to alert motorists to known safety defects in 2013. Finally, as recently as March 2013, 39 attorneys general settled claims against Google over its collection of personal data.

available to minimize or eliminate the possibility of duplicative discovery even without an

MDL" including "informal cooperation among counsel").

> **D.      Denial of A Stay Would Not Impose Hardship on S&P but a Stay Would Prejudice Mississippi**

When deciding whether a stay of the proceedings is appropriate, courts in this District

also consider (1) "the hardship and inequity on the moving party without a stay," and (2)

"prejudice the non-moving party will suffer if a stay is granted."  *Shemper v. B.P. Am., Inc.*, No.

2:10-cv-138-KS-MTP, 2010 WL 2867849, at *1 (S.D. Miss. July 19, 2010).  S&P will suffer no

hardship in the absence of a stay, but Mississippi would suffer prejudice if a stay were to be

granted.

> **1.      Any Minimal Inconvenience to S&P Is of Its Own Making**

S&P's argument that "the hardship to Defendants from not issuing a stay of proceedings

is undeniable" because S&P will have to defend multiple lawsuits in different courts is

unpersuasive.  S&P's Mem. Supp. Mot. Stay at 11.  First, any nominal inconvenience S&P may

incur because it is required to defend the attorney general remand motions is a problem of S&P's

own making.  S&P's 2013 Notices of Removal and the highly attenuated grounds S&P raises for

federal question jurisdiction are nothing more than efforts to delay and evade (and in the case of

Mississippi, further evade) consideration of the merits of each state's case, which each attorney

general brought under that state's unique laws.  S&P can hardly complain about now having to

defend its removals in various courts—particularly after it forced Mississippi to expend the time

and resources to respond to S&P's new removal arguments which could have been raised in its

2011 Notice of Removal, *see* Miss.' Mem. Supp. Mot. Remand at 6, ECF No. 37, and addressed

by the State in its initial motion to remand.  Further, as noted, two other federal district courts

have already set the remand motions for expedited review, and it is likely that other courts will

follow suit.  Therefore, S&P will have to defend its 2013 Notices of Removal in multiple courts even if the Judicial Panel orders a transfer.

Second, S&P's assertion of hardship at having to litigate the merits of the state actions in different federal district courts again presumes federal jurisdiction and has no bearing on whether this Court should deny the stay and decide the jurisdictional issue.  In any event, there would be minimal hardship to S&P of having to defend its misconduct in the jurisdictions in which it occurred.  S&P is a Fortune 500 company, with national reach and annual profits in excess of a billion dollars.  *See, e.g.*, Miss. Am. Compl. ¶ 7.  S&P's exposure to personal jurisdiction in each of the plaintiff states (including Mississippi) is an attendant privilege of doing business there. The state attorneys general have and will continue to coordinate their discovery and other litigation efforts in these cases, which will minimize any supposed hardship to S&P.

### 2.    A Stay Would Prejudice Mississippi by Causing Unnecessary and Additional Delay

Mississippi has a strong interest in the expedient resolution of both the 2011 and 2013 remand proceedings.  *Cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005) (purposes of removal statute are to deter improper removals sought merely to prolong and delay the litigation and impose costs on the opposing party; Local Uniform Civil Rule 7(b)(7) ("The court will give priority to . . . motions to remand, and other jurisdictional motions.").  Mississippi filed this action against S&P nearly two years ago and submitted substantial briefing on both motions that S&P now seeks to stay.  It would appear that S&P prefers to file nominal notices of removal and then complain that it is inconvenient to defend them.  It is inappropriate for S&P to force state governments with limited resources to invest the substantial time and resources required to challenge such meritless removals, only to be faced with last minute motions to stay and also a

17

*de facto* grant of those stays (as S&P has improperly given itself by failing to file a response to the State's remand motion by the April 3, 2013 deadline) instead of timely oppositions.

And this is not the first time S&P has granted itself a *de facto* stay.  In 2011, Defendants failed to file their response to Mississippi's motion to remand, instead seeking additional time and remand-related discovery at the eleventh hour.  ECF No. 22.  Ultimately, the parties agreed to hold Defendants' response to the 2011 Motion to Remand in abeyance, pending the Court's decision on Defendants' remand-related discovery motion.  S&P cannot claim a similar justification for delaying its response to the 2013 Motion to Remand.  Granting S&P's request for a stay instead of ordering S&P to respond immediately prejudices the State by continuing to cause unnecessary delay.

Further, there is no reason to delay any proceedings relating to co-defendant Moody's. From the beginning of this case, S&P and Moody's have acted as one, filing joint notices of removal in 2011, joint requests for remand-related discovery, and a joint request for an extension of time to respond to Mississippi's 2011 Motion to Remand.  ECF Nos. 1, 21, 22.  Mississippi respectfully submits that this Court should consider both remand motions against all Defendants at the same time[11] and not permit S&P's Motion to Stay All Proceedings to further delay all remand proceedings.

---

[11] On April 2, 2013, Moody's opposed S&P's motion to transfer and consolidate proceedings into an MDL and asking the Judicial Panel to sever Moody's from the case.  ECF No. 67 (J.P.M.L. Apr. 2, 2013).  Moody's has not filed a motion to sever with this Court, presumably because it prefers to benefit here from S&P's ongoing efforts to stay the case.  Even if Moody's were to file a motion to sever in this Court, it would prejudice the State and fail to meet the interests of judicial economy to consider that motion to sever prior to consideration of the identical 2011 remand proceedings (including Defendants' joint notice of removal, joint request for remand-related discovery, and the State's 2011 Motion to Remand).

18

**CONCLUSION**

For these reasons, Mississippi respectfully requests that this Court deny S&P's Motion to Stay All Proceedings, rule on S&P and Moody's fully-briefed request for remand-related discovery, set a schedule to complete briefing on Mississippi's 2011 Motion to Remand, grant Mississippi's 2013 Motion to Remand as unopposed or order S&P to immediately file its response thereto, and, ultimately, remand this matter to the Chancery Court of the First Judicial District of Hinds County, Mississippi.

Respectfully submitted this the 4th day of April, 2013.

Plaintiff, State of Mississippi, *ex rel.* Jim Hood, Attorney General

By: ___/s/ George Neville_____
George W. Neville (MBN 3822)
Mary Jo Woods (MBN 10468)
Geoffrey Morgan (MBN 3474)
Special Assistant Attorneys General
Office of the Mississippi Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Phone/Fax: (601) 359-3680/(601) 359-2003
Email: gnevi@ago.state.ms.us, gmorg@ago.state.ms.us

Blake A. Tyler (MBN 101786)
511 East Pearl Street
Jackson, Mississippi 39201
Phone/Fax: (601) 949-5000/(601) 510-9089
Email: btyler@pgtlaw.com

Vaterria Martin (MBN 101235)
5709 Highway 80 West
Jackson, Mississippi 39209
Phone/Fax: (601) 923-1577/(601) 923-1579
Email: vmartin@4martinsatlaw.com

Betsy Miller
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Phone/Fax: (202) 408-4600/(202) 408-4699
Email: bmiller@cohenmilstein.com

*Counsel for the State of Mississippi*

## <u>CERTIFICATE OF SERVICE</u>

I, Betsy Miller, do hereby certify that I have this day delivered a true and correct copy of the foregoing Memorandum via the Court's electronic filing system, to the following:

Fred Krutz
J. Chase Bryan
Mandie B. Robinson
FORMAN PERRY WATKINS
KRUTZ & TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201-4099
fred@fpwk.com
jcbryan@fpwk.com
robinsonab@fpwk.com

C. Michael Ellingburg
Daniel Coker Horton & Bell, P.A.
4400 Old Canton Road
Suite 400
Post Office Box 1084
Jackson, MS 39215-1084
mellingburg@danielcoker.com

Floyd Abrams
S. Penny Windle
Whitney M. Smith
CAHILL GORDON &
REINDEL LLP
Eighty Pine Street
New York, New York 10005-1702
fabrams@cahill.com
mmcloughlin@cahill.com
pwindle@cahill.com
wsmith@cahill.com

Joshua M. Rubins
James J. Coster
Glenn C. Edwards
SATTERLEE STEPHENS
BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
jrubins@ssbb.com
jcoster@ssbb.com

*Counsel for The McGraw-Hill*
*Companies, Inc. and Standard &*
*Poor's Financial Services LLC*

*Attorneys for Moody's Corporation*
*and Moody's Investors Service, Inc.*

So Certified, this the 4th day of April, 2013.

/s/Betsy Miller_____
Betsy Miller