# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

| | |
|---|---|
| STATE OF MISSISSIPPI, *ex rel.* JIM HOOD, ATTORNEY GENERAL, | ) ) CASE NO. 3:11-CV-343 HTW-LRA |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE MCGRAW-HILL COMPANIES, INC., STANDARD & POOR'S FINANCIAL SERVICES LLC, MOODY'S CORPORA-TION AND MOODY'S INVESTORS SER-VICE, INC. | ) ) ) ) ) |
| Defendants. | |

## REPLY IN SUPPORT OF MOTION TO STAY
## AND REQUEST FOR ORAL ARGUMENT

The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC,

("S&P Defendants")[1] respectfully submit this Reply Memorandum of Their Motion to Stay this

litigation pending a decision of the United States Judicial Panel on Multidistrict Litigation

("JPML") on the S&P Defendants' Motion to Transfer this and other related cases for centralized

pretrial proceedings.[2]

## PRELIMINARY STATEMENT

This action, one of nearly twenty state actions (the "State Actions") that is part of a coor-

dinated wave of litigation against the S&P Defendants, should be stayed pending the JPML's

---

[1] This memorandum also makes reference to defendants Moody's Corporation and Moody's Inves-tors Service, Inc. (together, the "Moody's Defendants"). The S&P and Moody's Defendants shall be collectively referred to as the "Rating Agencies."

[2] The arguments set forth in this memorandum are also incorporated in further support of the Mo-tion to Stay Responses to Motion to Remand or, in the Alternative, for Extension of Time filed by the S&P Defendants on April 3, 2013.

resolution of the S&P Defendants' motion to transfer.  The State of Mississippi's ("Plaintiff" or "State") Opposition to the Defendants' Motion to Stay ("Opposition" or "Opp.") offers no basis for this Court to conclude otherwise.  Indeed, the United States District Court for the Middle District of Pennsylvania, in an opinion and order of Judge Christopher Connor in the parallel action filed by the Commonwealth of Pennsylvania considering the same motion presently before this Court, has already held after full briefing and argument that "[t]he specter of inconsistent verdicts, and the opportunity to simplify the issues and to promote judicial economy ***strongly*** militates in favor of granting the motion to stay."  *See Pennsylvania* v. *McGraw-Hill Cos.*, Case No. 1:13-cv-605-CCC, 2013 WL 1397434, at \*4 (M.D. Pa. Apr. 5, 2013) (the "Pennsylvania Ruling") (emphasis added) (a copy of this opinion is annexed to this memorandum as Exhibit 1). The same considerations warrant a stay here.

Rather than substantively address the arguments the S&P Defendants have asserted in favor of a stay, the State spends much of its Opposition Brief attempting to convince this Court that it must first decide Plaintiff's motion to remand before ruling on the S&P Defendants' motion to stay.  (Opp. at 7-9.)  That is not the law.  This Court has the power to stay these proceedings and should do so, for the reasons already recognized by the federal court in the Middle District of Pennsylvania.  Further, the State repeatedly addresses the merits of the S&P Defendants' Supplemental Notice of Removal, but fails to advance any colorable argument as to why a temporary stay of these proceedings should not be entered so that one court can address the common jurisdictional challenges at once.  (Opp. at 12-13.)  Although this case has been pending for some time, that fact does not alter the reality that this case is one of a coordinated wave of cases, and that all factors favoring a stay are present here.

## I.       THIS COURT HAS AUTHORITY TO ENTER A STAY

This Court has the inherent power to stay proceedings, at its discretion, to control its docket and conserve judicial resources.  *See* Opening Br. at 8.  This is true even when a motion to remand is pending.  *See* Pennsylvania Ruling at *2 ("It is quite clear that the court has the discretionary power to stay litigation during the pendency of a motion challenging its subject matter jurisdiction.") (citing *United States* v. *Breyer*, 41 F.3d 884, 893 (3d Cir. 1994)).  Accordingly, the circumstances here dictate that a stay of these proceedings is warranted.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (Because "the jurisdictional issue in question is easily capable of arising in [numerous] district courts throughout the nation [and] involves common questions of law and fact . . . there are real economies in transferring such cases [to one court.]  Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course."); *Curtis* v. *BP America, Inc.*, 808 F. Supp. 2d 976, 978 (S.D. Texas 2011) ("[I]f the motion to remand presents difficult issues that are common to cases that will be transferred in the MDL court, a stay is generally appropriate."); *Esquivel* v. *BP Co. North America, Inc.*, Civ. A. Nos. B-10-227, B-10-236, B-10-237, 2010 WL 4255911, at *4 (S.D. Tex. Oct. 14, 2010) ("Generally, other district courts also favor staying an action pending a decision on a motion to transfer before the JPML when motions to remand present issues likely to be addressed by the MDL court."); *Nekritz* v. *Canary Capital Partners, LLC*, No. Civ. 03-5081(DRD), 2004 WL 1462035, at *2 (D.N.J. Jan. 12, 2004) ("Plaintiff apparently concedes, correctly, that the Court has the power to consider [defendant's] motion for a stay without first determining conclusively that removal was proper and that it has jurisdiction over the merits of the case.") (citing *In re Ivy*, 901 F.2d 7 (2d Cir. 1990)); *Oregon ex rel. Kroger* v. *Johnson & Johnson*, No. 11-CV-86-AC, 2011 WL 1347069, at *7 (D. Or. Apr. 8, 2011) ("The issues raised in the remand

motion are complicated and are likely to arise in the . . . MDL, and the interest of judicial economy and consistency far outweigh any possible harm to Plaintiff resulting from a brief stay.").

Plaintiff argues, however, that this Court lacks such authority until issues of subject matter jurisdiction are resolved.  Citing *Ex Parte McCardle*, 74 U.S. 506 (1868), the State suggests that this Court must first rule on the pending motion to remand before addressing the S&P Defendants' request for a stay.  (Opp. at 9.)  This is incorrect.  *McCardle* does not hold that this Court lacks the power to stay proceedings pending a ruling from the JPML (nor did it involve motions to remand or JPML proceedings).  Rather, *McCardle* holds simply that federal courts should not issue rulings on the merits of a case without first assuring itself of its own jurisdiction. 74 U.S. at 515 ("[T]his Court cannot proceed to pronounce judgment in this case, for it has no longer jurisdiction of the appeal.").  Here, however, the S&P Defendants are ***not*** asking the Court to reach the merits of the claim.  In fact, the S&P Defendants are seeking the exact opposite relief—the pending request is that the Court defer any action on the merits so that such questions can be resolved uniformly in a consolidated action.  Thus, the Court is merely ***postponing*** determination of the jurisdictional dispute between the parties until the JPML decides the Motion to Transfer, which is entirely appropriate in these circumstances.  Pennsylvania Ruling at *4 (resolution of "the jurisdictional issue may wait"); *see also Meyers* v. *Bayer AG*, 143 F. Supp. 2d 1044, 1047 (E.D. Wis. 2001) ("[G]ranting a stay is not adjudicating the merits of a case. *McCardle* [does not require] resolving jurisdictional matters before considering whether to grant a stay motion."); *Aikins* v. *Microsoft Corp*., CIV.A.00-0242, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000) ("Plaintiff asserts that this court lacks subject matter jurisdiction and that jurisdictional issues should be resolved prior to any other action.  While generally true, cases such as this [which present common issues] require special consideration.").

Other cases cited by the State do not compel a different result here.  For example, in *Craft* v. *United Insurance Co. of America*, Civ.A.4:01CV339LN, 2002 WL 32509283, at *2 (S.D. Miss. Jan. 17, 2002), the court denied the motion to stay because the "pivotal remand issue involve[d] the application of Mississippi law" and is "unique to this case and should be decided in this court."[3] *Craft* recognized, however, that when courts are faced with remand issues "common to other cases that had been transferred to the MDL," granting "a stay was appropriate both to conserve judicial resources and to prevent inconsistent results."  *Id.*  This is the course already endorsed by the Middle District of Pennsylvania and is exactly the situation before the Court here.

Furthermore, briefing on the State's motions to remand is not yet complete and therefore are not yet ripe for decision.  In contrast, briefing on this motion is now complete, and thus is ready for decision in advance of the State's motions to remand.  Thus, cases where the court decided the motion to remand in advance of the pending motion to stay are inapposite to the present circumstances.  *See, e.g.*, *Bell* v. *Prudential Insurance Co.*, No. Civ.A.3:97-CV-340BN, 1997 WL 33708408, at *1 (S.D. Miss. Sept. 4, 1997); *Hood ex rel. Mississippi* v. *Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) (Wingate, J.); *R.N.R. ex rel. Rogers* v. *Yama-*

---

[3]     Other cases cited by the State in support of its position similarly relied upon the fact that the remand issues turned on application of Mississippi law and were unique to the dispute at issue.  *See, e.g.*, *Mississippi ex rel. Hood* v. *Gulf Coast Claims Facility*, No. 3:11-CV-00509, 2011 WL 5551773, at *1, *4 (S.D. Miss. Nov. 15, 2011) (remand issue based on whether a subpoena *duces tecum* under Mississippi law is considered a "civil action" for the purposes of removal under 28 U.S.C. § 1441); *Hood ex rel. Mississippi* v. *Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) (Wingate, J.) (remand issue was based upon whether Mississippi was the real party in interest under Mississippi statute for diversity purposes); *R.N.R. ex rel. Rogers* v. *Yamaha Motor Corp., U.S.A.*, No. 3:09-cv-608, 2010 WL 1794391, at *3 (S.D. Miss. Apr. 30, 2010) (Wingate, J.) (remand was based on a diversity issue which "depends upon an interpretation of Mississippi law, of which this court, sitting in Mississippi, is quite familiar").  The State has not asserted, nor could it, that the remand issues presented by the S&P Defendants' Supplemental Notice of Removal turn on the interpretation of Mississippi law.

*ha Motor Corp., U.S.A.*, No. 3:09-cv-608, 2010 WL 1794391, at *3 (S.D. Miss. Apr. 30, 2010) (Wingate, J.).

For example, in *R.N.R.*, one of the reasons that this Court chose to decide the remand motion first was that "the parties have briefed the issue and have argued the matter." 2010 WL 1794391, at *3. Here, however, briefing is not complete and there has been no argument on the remand motions. Furthermore, discovery on the State's initial motion to remand, which the Rating Agencies have requested, also has not been yet been completed. To the extent this Court grants the requested discovery, additional time will be required to complete that discovery before there can be full briefing on the State's initial motion and all jurisdictional challenges can be fully resolved. Therefore, granting the relief sought by the S&P Defendants in this case could conserve resources by obviating the need to conduct remand-related discovery and complete briefing on the State's initial remand motion. This is the case because, to the extent the JPML grants the S&P Defendants' Transfer Motion and concludes that federal question jurisdiction exists, the Rating Agencies' pending request to conduct remand-related discovery to establish additional grounds for federal jurisdiction is moot. *Mississippi ex rel. Hood* v. *Entergy Mississippi, Inc.*, No. 3:08CV780 HTW-LRA, 2012 WL 3704935, at *16 (S.D. Miss. Aug. 25, 2012) (Wingate, J.) ("This court has found that subject matter jurisdiction, under the [Class Action Fairness] statute, applies. [Defendant]'s assertion of an additional ground for jurisdiction, therefore, need not be addressed here."); *Simons* v. *State Farm Fire & Casualty Co.*, No. 1:09CV172-HSO-RHW, 2009 WL 2567198, at *2 (S.D. Miss. Aug. 18, 2009) ("Because the Court has concluded that it has subject matter jurisdiction over Plaintiffs' claims related to the flood policy, it need not reach the merits of State Farm's arguments regarding this Court's diversity jurisdiction.").

II.    **STAYING THESE PROCEEDINGS IS APPROPRIATE BECAUSE JURISDIC-
TION WILL BE DECIDED AFTER THE MOTION TO TRANSFER IS RE-
SOLVED**

It is not necessary for the Court to decide the State's Remand Motion now when the

JPML is likely to grant the S&P Defendants' pending Motion to Transfer, thereby consolidating

the State Actions.  As set forth in greater detail in the S&P Defendants' Memorandum of Law in

Support of Movants' Motion To Transfer Actions for Coordinated or Consolidated Pretrial Pro-

ceedings Pursuant to 28 U.S.C. § 1407, dated Mar. 8, 2013 (attached as Exhibit 2) ("Transfer

Motion"), this case is one of nearly twenty parallel and coordinated cases, all of which assert the

same basic legal and factual arguments.  The JPML has scheduled argument on the motion for

May 30, 2013.  If the JPML grants the Transfer Motion, then it will transfer this and the other

State Actions to one "transferee" district court for centralized pretrial proceedings that will then

decide any jurisdictional issues.  J.P.M.L. Rule 9.1(a).  As the Pennsylvania Ruling already con-

cluded, the "[j]urisdictional issues will be similar, if not identical, in the other claims brought by

state Attorneys General subject to transfer by the JPML . . . [W]hen the jurisdictional issues are

purely legal in nature and when the issues are virtually identical to those present in other cases,

district courts should defer to the possibility of consolidation and determination by one judicial

body to promote judicial economy and avoid inconsistent judgments."  Pennsylvania Ruling at

*4.

A.    **No Unique Issues Counsel against a Stay**

The State does not, and could not, deny that the S&P Defendants' Supplemental Notice

of Removal raises identical jurisdictional issues as the remand motions presented in the other

State Actions that will have to be addressed by a federal court, whether it be this Court or a trans-

feree court assigned by the JPML.  Instead, the State claims that because this case raises jurisdic-

tional issues that are not present in other cases, purportedly "unique" circumstances exist in this

case that justify denying the S&P Defendants' motion for a stay.  (Opp. at 11-12.)  These arguments are unavailing.

**_First_**, as the State correctly notes, this Court presently has before it a joint motion for remand-related discovery in order to respond to the State's motion to remand filed after the Rating Agencies removed based upon the Class Action Fairness Act ("CAFA") and diversity grounds. (Opp. at 3.)  If the case is transferred, and the transferee court determines it has federal question jurisdiction over this case, that conclusion will moot the Rating Agencies' prior removal on the grounds of CAFA and diversity, thus obviating the need for this Court or any court to decide the motion to conduct remand-related discovery, and more importantly, to conduct such discovery. Thus, the efficiencies that would be achieved by allowing one transferee court to first decide the pure legal jurisdictional issues that are common to all cases again weighs in favor of granting a stay until the JPML rules.[4]  To the extent the Transfer Motion is denied, all jurisdictional issues could then be resolved by this Court.

**_Second_**, the State's argument that the S&P Defendants' Supplemental Notice of Removal is untimely is premised on the assumption—one never before uttered or even suggested by the State—that all elements supporting federal question jurisdiction were present when the Complaint was first filed on May 10, 2011.  The S&P Defendants have asserted an additional basis for federal jurisdiction over the instant action on the grounds that the claims Plaintiff seeks to

---

[4]     The presence of Moody's as a co-defendant in this action does not affect the S&P Defendants' Transfer Motion.  David F. Herr, _Multidistrict Litigation Manual_ § 5:43, at 173-74 (2012) provides that:  "The Panel has rejected the argument that transfer should not be ordered where the parties are not the same in the various cases. For example, the Panel has ordered the transfer of a case where one of the defendants in that action is not a party to any of the other actions . . . . The necessary element for transfer is common factual issues.  If there are common factual issues, then the presence of identical parties in the actions is not necessary."  _See also In re Zyprexa Products Liability Litigation_, 314 F. Supp. 2d 1380 (J.P.M.L. 2004) (noting that the presence of an additional defendant is not significant when the underlying action still contains similar claims and factual allegations).  Moreover, even the State asserts that "there are key factual and legal issues common to its claims" against both the S&P and Moody's Defendants.  (Opp. at 7.)

assert "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005); *see also* Supplemental Notice of Removal, ¶ 2.

As the S&P Defendants will describe more fully in briefing on the remand motion when that schedule is set by this Court or a transferee court, there are four factors in the *Grable* analysis that must all be satisfied for there to be federal question jurisdiction. *Gunn* v. *Minton*, 133 S. Ct. 1059, 1065 (2013) ("federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress"); *Grable*, 545 U.S. at 314. One of those four critical factors is that the action must be of substantial interest not simply to the parties, but to the federal system as whole. *Id.* Another factor is whether a federal forum entertaining the action would disturb the "congressionally approved balance of the federal and state judicial responsibilities." *Id.* Whatever the situation may have been previously, on February 5, 2013, both factors were unquestionably met when a nationwide group of state attorneys general filed a coordinated wave of litigations against the S&P Defendants for alleged violations of state consumer protection and unfair trade practices laws.[5] Thus, the MDL court, if

---

[5]     The reality is that, while the federal issues in this case may have been significant to the parties from the beginning, the interest to the federal system "as a whole" is much more substantial now that there are nearly twenty coordinated State Actions asserting virtually identical allegations and threatening to supplant both the letter and the aims of a dedicated federal regulatory regime. Indeed, had the S&P Defendants removed on federal question grounds at the outset of this case, it is certain that the State would have, at that point, argued for remand on the basis of a lack of a substantial interest to the federal system as a whole. The difference between then and now is categorical, not one of degree.

one is selected, will be fully equipped to address whether the Supplemental Notice of Removal in this action on March 6, 2013, was timely.[6]

### B.     The State's Jurisdictional Arguments Fail on the Merits

As set forth in the Opening Brief on this motion (as well the S&P Defendants' Motion to Stay Responses to the State's Remand Motion), the State's jurisdictional challenges are best addressed by a transferee court, which will be best situated to resolve all issues at once.  As the Pennsylvania Ruling concluded, "it would be a waste of judicial resources to proceed with the instant matter when the JPML is considering the consolidation of 17 identical cases. . . . [O]ne court should adjudicate the uniform jurisdictional issues presented in these cases as well as any other pre-trial motions to prevent inconsistent judgments on highly complex issues."  Pennsylvania Ruling at *4.

While the S&P Defendants have reserved their response to all of the State's challenges to the Court's jurisdiction pending either the resolution of the Transfer Motion before the JPML or this Court's ruling on the motion for remand-related discovery, any merits-based jurisdictional argument the State presents in opposition to the instant motion to stay fails.  Focusing on the S&P Defendants' removal on the grounds of federal question jurisdiction pursuant to *Grable*, the State does not dispute that federal issues are present in this case, but argues that those issues relate only to defenses, not to the Mississippi Consumer Protection Act ("MCPA") claim itself. (Opp. at 12-13)  This is incorrect.  While there are federal issues in this case related to affirma-

---

[6]     The State speculates that two other federal courts will shortly be addressing timeliness and procedural arguments raised by the S&P Defendants' removal of the Connecticut and Illinois actions based upon the briefing schedules set in those cases.  (Opp. at 11, n. 8.)  Those issues are distinct from any procedural objections the State raises here, because this case was already pending in federal court at the time the S&P Defendants asserted additional grounds for removal in this case and in any event, should have no impact on this Court's determination of the instant motion to stay.

tive defenses (such as whether the State's claim is preempted or runs afoul of the First Amendment), there are also necessary federal questions embedded in the State's claim itself.[7]  Given that this is an area of extensive and active federal regulation, including "comprehensive" enforcement mechanisms (*see* Supplemental Notice of Removal, ¶¶ 5-8), the question of whether and how far the State's claim under the MCPA may extend by its own terms must be addressed, whether or not the S&P Defendants may also have defenses to the State's claim on federal grounds.  For example, in order to recover the civil penalty that it is seeking under the MCPA (Complaint ¶ 91), the State must demonstrate that a defendant knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by the Act. Miss. Code Ann. § 75-24-19(1)(b).  The statute further states that "a knowing and willful violation occurs when the court finds from clear and convincing evidence that the party committing the violation knew or should have known that his conduct was a violation of Section 75-24-5." Miss. Code Ann. § 75-24-19(3).  Yet many of the relevant statements by S&P were made in connection with SEC regulations regarding purported conflicts of interest and that are subject to regular and direct SEC oversight.  *See, e.g.*, Complaint ¶ 40.  Therefore, these federal regulations will necessarily play a role in determining whether the statements were made with the requisite scienter.[8]

The State asserts that this Court should conduct a "preliminary assessment" of the jurisdictional issues to determine if they may be "easily resolved," citing *Meyers* v. *Bayer AG,* 143 F.

---

[7]    The S&P Defendants do not raise a "complete preemption" argument as grounds for federal jurisdiction so any argument that complete preemption does not exist in this case is irrelevant.

[8]    The federal courts have supplemental jurisdiction over the State's unjust enrichment claim.  *See Noble* v. *White*, 996 F.2d 797, 799 (5th Cir. 1993) ("[A] district court properly exercises supplemental jurisdiction over state law claims that are part of the same case or controversy over which the district court has original jurisdiction…."); *Polacek* v. *Kemper County,*  739 F. Supp. 2d 948, 955 (S.D. Miss. 2010) ("Once the court has original jurisdiction over a case, § 1367(a) grants the court subject matter jurisdiction over state laws claims that are part of the same case or controversy.").

11

Supp. 2d 1044, 1048 (E.D. Wis. 2001) (Opp. at 13).  This is the very analysis engaged in by the

Pennsylvania court, which conducted a "careful review" before concluding that "the legal issues

surrounding the . . . motion to remand are novel and complex," requiring "an expansive review

of case law governing the history and application of the *Grable* holding as well as case law and

legislative history governing the scope and application of CRARA."  Pennsylvania Ruling, at *3.

It would surely be more efficient to have one court engage in that analysis than nearly twenty.[9]

## III.    ALL OTHER FACTORS WEIGH IN FAVOR OF A STAY

The parties agree that an analysis of whether the parties will suffer any prejudice if a stay

is or is not granted is relevant to the present inquiry.  (Opp. at 16) (asserting that courts in this

District consider (1) "hardship and inequity on the moving party without a stay," and (2) the

"prejudice the non-moving will suffer if a stay is granted.") (citing *Shemper* v. *B.P. America,

Inc.*, No. 2:10cv138-KS-MTP, 2010 WL 2867849, at *1 (S.D. Miss. July 19, 2010)).  Considera-

tions of judicial economy are also relevant as well.  *See, e.g.*, *Hood ex rel. Mississippi* v. *Bristol-

Myers Squibb Co.*, No. 1:12-CV-00179-GHD-DAS, 2013 WL 30098, at *2 (N.D. Miss. Jan. 2,

2013) (issuing stay pending JPML determination in order to "promote judicial economy").

### A.    The S&P Defendants Will Suffer Undue Hardship if a Stay is Not Granted

Plaintiff asserts, without analysis, that the S&P Defendants will suffer no prejudice if a

stay is not granted.  (Opp. at 16.)  This assertion has no basis in logic or reality.  First, the burden

imposed upon the S&P Defendants is not only the burden of having to defend simultaneous mo-

tions to remand, as Plaintiff suggests.  Instead, the burden involves the prospect of having to de-

---

[9]     While this Court has acquired familiarity with this matter, judicial economy would be best served
by allowing one transferee court, if the S&P Defendants' Transfer Motion is granted, to decide
these issues given the identical and complex nature of the jurisdictional issues in play.  Further-
more, the transferee court would be fully capable of addressing any unique jurisdictional issues
this case may present, which is also appropriate, given that briefing on the State's motions to re-
mand is not yet complete.

fend seventeen nearly identical actions in different courts.  Indeed, the Pennsylvania Ruling articulated well the burden that the prospect of this multi-front litigation imposes.  Pennsylvania Ruling at *5 ("Denial of the stay would prejudice the defendants who would be forced to litigate 16 separate cases simultaneously.  The costs and loss of resources associated with such an undertaking are obvious.").[10]

Because consolidation is only possible in federal court, to the extent this Court remands the instant action prior to the JPML's resolution of the Transfer Motion, it will deny the S&P Defendants the opportunity of such consolidation.  Instead, the preferable course is to allow the JPML to decide the Transfer Motion so as to avoid duplication of effort on the part of both the parties and this Court.  If the Transfer Motion is granted, then this case will be transferred to a transferee district court that will decide pretrial issues such as jurisdiction.[11]

Finally, the State asserts, without any basis, that because the S&P Defendants are subject to personal jurisdiction in this State and other states (an assertion that the S&P Defendants dispute), any burden is justified.  (Opp. at 17.)  However, this is not a justification to expose the S&P Defendants to the prospective burden of defending nearly seventeen identical litigations in multiple forums across the nation, particularly when there are reasonable options for coordination.  *See McFee* v. *Bayer Corp.*, No. 01-1820-M (W.D. La. Nov. 16, 2001) (adopting magistrate judge's October 16, 2001 report and recommendation) ("[I]t would be manifestly unfair to require [these] defendant[s], which [have] been named as defendant in dozens of other similar cas-

---

[10]    In the seventeenth case, brought by the District of Columbia, a stay has been ordered pursuant to agreement of both parties.  *See District of Columbia* v. *McGraw-Hill Cos.*, No. 13-cv-0292-JDB, Dkt No. 3 (D.D.C. Mar. 12, 2013).

[11]    The State asserts that the S&P Defendants have "forced" it to expend unnecessary time and resources in responding to their Supplemental Removal Notice.  (Opp. at 16.)  The State's argument that the Supplemental Notice of Removal is untimely assumes that the elements supporting federal question jurisdiction existed when the case was filed.  As set forth above, that is not the case.

es, to defend each of those case independently").  In addition, while the State admits that it has

coordinated with other state attorneys general in connection with the State Actions, it wants to

deny the S&P Defendants any benefit of that coordination by opposing consolidation of these

actions.  (Opp. at 15.)  All the S&P Defendants seek at this time is that these actions be treated in

a coordinated fashion, consistent with the manner in which they have been litigated.  The State

has offered this Court no reason why this relief should not be granted.

### B.      Plaintiff Would Not Suffer Any Unnecessary Delay

The State claims that it has a "strong interest" in the expedient resolution of remand is-

sues.  (Opp. at 17.)  However, any delay that may ensue during the stay is likely to be only a

"temporary inconvenience" before the JPML rules on the transfer motion.  *See* Pennsylvania

Ruling at *5.  As noted, the JPML has set argument on the Transfer Motion for May 30, 2013.

While it is impossible to predict the exact length of time that will pass before the remand motion

would be considered by the transferee court, there is no indication of any unreasonable delay.

Indeed, the Pennsylvania Ruling described any delay as "relatively short," given that a decision

by the JPML is anticipated "in approximately 60-90 days."  Pennsylvania Ruling at *5.

Further, while the State conclusorily asserts that other courts are set to rule on the propri-

ety of the S&P Defendants' removal, such that a stay is not warranted, no court has done so to

date.  In fact, the only court to rule on this motion, a motion to stay proceedings pending resolu-

tion of the Transfer Motion, has granted it.  *See* Pennsylvania Ruling at *5.[12]  The fact is, howev-

er, even if other courts do rule on other States' motions to remand in the intervening time period,

briefing on the State's initial motion to remand is not yet complete and there will be unresolved

---

[12]      The Northern District in Illinois granted the motion to stay in a minute order, with the exception
of the remand proceedings, to address the timeliness issues specific to that case.  *See Illinois* v.
*McGraw-Hill Cos. et al.*, Case No. 1:13-cv-01728, Dkt. No. 18 (N.D. Ill. Mar. 20, 2013).

jurisdictional issues in this case.  Moreover, the fact that additional time must be allowed to con-

duct the remand-related discovery that the Rating Agencies have requested, if the Court con-

cludes such discovery is appropriate, means there is little chance that any stay entered by this

Court pending a ruling by the JPML will delay the ultimate resolution of the State's jurisdiction-

al challenges.

### C.    A Stay Advances Judicial Economy and Simplifies the Issues

Finally, the interests of judicial economy will be furthered by granting the S&P Defend-

ants' Motion to Stay these proceedings pending a decision by the JPML on the Transfer Motion.

The S&P Defendants' position is that all pre-trial issues would benefit from consolidation, and

this position is not limited to the merits of each State's claims, as Plaintiff wrongly asserts (Opp.

at 14).  Indeed, the Pennsylvania Ruling has already concluded that the motions to remand pre-

sent complex issues that are better addressed by one court.  *See* Pennsylvania Ruling at *3, *4

(noting that resolving the jurisdictional issues involved is "[o]bviously . . . not a simple exercise"

and "it would be a waste of judicial resources to proceed with the instant matter when the JPML

is considering the consolidation of 17 identical cases. . . . [O]ne court should adjudicate the uni-

form jurisdictional issues presented in these cases as well as any other pre-trial motions to pre-

vent inconsistent judgments on highly complex issues.").[13]

Not only will the parties' time and resources be saved by staying these proceedings and

allowing the JPML to first decide the Transfer Motion, but this Court's time and resources will

---

[13]    While the State asserts that this case presents "unique" issues, it does not and cannot credibly de-
ny that this action has significant overlap with the other State Actions and will no doubt involve
the resolution of similar jurisdictional issues.  *See* Pennsylvania Ruling at *4 ("Even a cursory re-
view of the complaints in the other state actions supports [the] contention" that the State Actions
are premised on the same factual allegations and that "[t]here is little doubt that ***identical*** jurisdic-
tional issues and motions to remand will be raised in other actions") (emphasis added).

be spared as well.[14]  If the JPML grants the Motion to Transfer, then this case will be transferred to one transferee district court for centralized pre-trial proceedings, including a decision on the jurisdictional disputes between the parties.  Instead of spending valuable time and resources in considering Plaintiff's remand motions, the more logical course is to allow the JPML to render its decision on the Transfer Motion and allow that court to decide the common jurisdictional issues if transfer is granted.  If the Transfer Motion is denied, this Court is obviously able to lift the stay and continue with resolving the jurisdictional issues in play here.  As noted, the Pennsylvania Ruling concluded that the legal issues raised by the State's supplemental motion to remand "are novel and complex" and it would therefore be most efficient to allow one court to undertake this analysis.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Uniform District Court Rule 7(b)(6)(a), The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC, request oral argument on the Motion to Stay.  This motion is related to 17 other cases and a failure to stay this case may impact the uniform resolution of those cases.  Accordingly, we respectfully request oral argument on this matter.

## CONCLUSION

For the aforementioned reasons, and for the reasons fully set forth in the S&P Defendants' Motion to Stay, the S&P Defendants request that this Court grant their Motion to Stay.

Dated:  April 15, 2013

---

[14]     The State repeatedly accuses the S&P Defendants of seeking to "evade" jurisdiction of the state courts.  (*E.g.*, Opp. at 5.)  This mischaracterization ignores the fact that the S&P Defendants are only exercising their right, possessed by every litigant, to litigate in federal court disputes over which those courts have jurisdiction.  *Wecker* v. *National Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907) ("[T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court….").

By:      **/s/ J. Chase Bryan**

Fred Krutz, MSB #4270
J. Chase Bryan, MSB #9333
Mandie B. Robinson, MSB # 100446
FORMAN PERRY WATKINS KRUTZ &
TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201-4099
Phone: (601) 960-8600
Fax: (601) 960-8613

Floyd Abrams (*pro hac vice*)
S. Penny Windle (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York  10005-1702
Phone: (212) 701-3000
Fax: (212) 378-2712

***Attorneys for The McGraw-Hill Companies, Inc.***
***and Standard & Poor's Financial Services LLC***

## **CERTIFICATE OF SERVICE**

I, J. Chase Bryan, do hereby certify that I have this day served the foregoing pleading via

the Court's electronic filing system, to the following:

>Geoffrey Morgan
>George W. Neville
>Meredith M. Aldridge
>Special Assistant Attorneys General
>Office of the Mississippi Attorney General
>P.O. Box 220
>Jackson, MS 39205
>gnevi@ago.state.ms.us
>gmorg@ago.state.ms.us
>maldr@ago.state.ms.us

>Blake A. Tyler
>775 East Fortification Street
>Jackson, MS 39202
>btyler@pgtlaw.com

>Vaterria Martin
>5709 Highway 80 West
>Jackson, MS 39209
>vmmartin@4martinsatlaw.com

>Betsy Alexandra Miller
>Kit A. Pierson
>Cohen Milstein Sellers & Toll
>1100 New York Avenue, NW, Suite 500 West
>Washington, DC 20005
>bmiller@cohenmilstein.com
>kpierson@cohenmilstein.com

>***Counsel for Plaintiff, State of Mississippi, ex rel. Jim Hood, Attorney
>General***

>C. Michael Ellingburg
>Daniel Coker Horton & Bell, P.A.
>4400 Old Canton Road
>Suite 400
>Post Office Box 1084
>Jackson, MS 39215-1084
>mellingburg@danielcoker.com
>Joshua M. Rubins
>James J. Coster

Glenn C. Edwards
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
jrubins@ssbb.com
jjcoster@ssbb.com

***Attorneys for Moody's Corporation and Moody's Investors Service, Inc.***

This the 15th day of April, 2013.

　　　　**/s/ J. Chase Bryan**
J. Chase Bryan