# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

| | |
|---|---|
| STATE OF ARKANSAS *ex rel.* DUSTIN MCDANIEL, ATTORNEY GENERAL | PLAINTIFF |
| v. | Case No. 4:13-cv-117-KGB |
| THE MCGRAW-HILL COMPANIES, INC., and STANDARD & POOR'S FINANCIAL SERVICES LLC | DEFENDANTS |

## ORDER

Before the Court is a motion to stay proceedings pending transfer to MDL filed by defendants McGraw-Hill Companies, Inc. ("McGraw-Hill"), and Standard & Poor's Financial Services LLC ("S&P") (Dkt. No. 4). Plaintiff State of Arkansas ("the State") responded in opposition to the motion (Dkt. No. 14). Defendants replied to the State's opposition (Dkt. No. 15). Defendants filed notices of supplemental authority (Dkt. Nos. 17, 22, 26). Also pending is the State's motion for remand (Dkt. No. 16). Defendants responded to the State's motion for remand (Dkt. No. 24).

### I.  Procedural Background

This is one of nearly 20 actions initiated by the Attorneys General of several states and the District of Columbia against S&P for alleged state-law statutory violations and common law fraud (the "State Actions"). In this case, the State has sued for alleged violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*, and common law fraud. On March 11, 2013, defendants filed the motion to stay proceedings pending transfer to MDL (Dkt. No. 4). Around that same time, defendants filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate and transfer all of the related actions to the

EXHIBIT B

United States District Court for the Southern District of New York for pretrial proceedings pursuant to 28 U.S.C. § 1407 (Dkt. No. 5-1). On April 1, 2013, the State filed a motion to remand the matter to state court (Dkt. No. 16). On April 18, 2013, Defendants responded to that motion (Dkt. No. 24). On April 10, 2013, the Court received notice that argument will be held May 30, 2013, at a panel hearing. (*In Re Standard & Poor's Rating Agency Litigations*, MDL No. 2446, Dkt. No. 79).

## II. Background

S&P is the world's largest credit rating agency and a Nationally Recognized Statistical Rating Organization ("NRSRO") registered with the United States Securities and Exchange Commission ("SEC").

Given the national reach of ratings and their role in the financial markets, in 2006 Congress, acting pursuant to the Commerce Clause, enacted the Credit Rating Agency Reform Act of 2006 ("CRARA"), expressly finding that credit rating agencies are of "national importance" and that safeguarding the integrity of the ratings process from conflicts of interest is an important federal interest. Credit Rating Agency Reform Act of 2006, Pub.L. No. 109-291, 120 Stat. 1327 (Sept. 29, 2006). Accordingly, CRARA included a variety of requirements related to the independence of the ratings process and delegated to the SEC "exclusive authority to enforce the provisions of this section in accordance with this chapter with respect to any [NRSRO], if such [NRSRO] issues credit ratings in material contravention of those procedures relating to such [NRSRO], including procedures relating to the prevention of misuse of nonpublic information and conflicts of interest." 15 U.S.C. § 78o-7(c)(1). Defendants contend these matters implicate CRARA.

EXHIBIT B

Case 1:13-cv-00817-WKW-SRW Document 27-4 Filed 04/26/13 Page 3 of 9
Case 1:13-cv-00930-WKW-SRW Document 275 Filed 04/26/13 Page 3 of 9

This action was brought against S&P for alleged violations of the ADTPA and common law fraud in connection with S&P's rating of certain structured finance securities (Dkt. No. 2, ¶¶ 165-72). The parties generally agree that this action and each of the other State Actions are premised on the same basic theory: that in alleged violation of state unfair trade practices and/or blue sky laws, S&P yielded to pressure from issuers of securities to assign higher credit ratings than it otherwise would have, thereby purportedly rendering "false" various statements S&P has made over the years about the independence of its credit ratings (Dkt. No. 2, ¶¶ 1, 11, 146). Each of the State Actions alleges that S&P's methodology for rating certain structured finance securities was corrupted by a desire for increased revenue and market share resulting from the fact that S&P, like all of the major credit rating agencies, uses an "issuer pays" compensation model (Dkt. No. 2, ¶¶ 56, 146, 167).

Defendants contend, and the State does not dispute, that a comparison of the allegations across each state of the State Actions reveals over 100 allegations that are found in substantially similar form in more than three-fourths of the State Action complaints. Indeed, over 90% of the Attorney General's factual allegation paragraphs are identical or substantially similar to the complaints in one or more of the other State Actions.

In this action, the State requests the following relief: injunctive relief, an accounting, civil penalties, costs and attorneys' fees, disgorgement, and such other relief as the Court may deem just and equitable (Dkt. No. 2). Essentially the same relief is sought in every other State Action: some form of civil penalties, disgorgement and/or restitution on behalf of unidentified victims, and permanent injunctive relief aimed at regulating aspects of S&P's credit rating activities. Defendants contend that such broad relief will conflict with the comprehensive federal scheme which, according to defendants, among other things, (i) contemplates and permits (even

EXHIBIT B

if it regulates) the issuance of ratings by rating agencies that are paid by those they rate, *see* 15 U.S.C. § 78o-7(a)(1)(B)(viii), and (ii) expressly prohibits states from regulating the "substance" of ratings or methodologies by which they are derived, *see id.* § 78o-7(c)(2).

**III.  Analysis**

"Traditionally, an applicant for a stay has the burden of showing specific hardship or inequity if he or she is required to go forward."  *Jones v. Clinton*, 72 F.3d 1354, 1356 (8th Cir. 1996) (citing *Landis v. North American Co.*, 299 U.S. 248, 254-56 (1936)).  A district court has the inherent power to stay its proceedings, and this power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis*, 299 U.S. at 254-55.  *See also Adams v. Tyson Foods, Inc.*, No. 07-cv-4019, 2007 WL 1539325 at *1 (W.D. Ark. May 25, 2007) (granting defendants' motion to stay pending decision by the JPML).  This power requires a court to exercise its "judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

When a motion to transfer is pending before a Multidistrict Panel, the Court can choose to withhold any rulings on the action before it, including a decision on jurisdiction.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("[T]he MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, that objection to be resolved by the transferee court." (internal citation omitted)); *Shepherd v. Baptist Health*, No. 4:12-cv-00662, 2012 WL 6811076 (E.D. Ark. Nov. 30, 2012).  However, "[t]he mere pendency of a motion to transfer before the Multidistrict Panel does not. . . limit [the Court's] ability to act on matters properly before it." *General Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir. 1979); *see also* Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 147 F.R.D. 589, 601 (J.P.M.L. 1993) ("The

4

EXHIBIT B

pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."); *Kohl v. Am. Home Products Corp.*, 78 F.Supp.2d 885, 888 (W.D. Ark. 1999) ("[A] motion to transfer a case to MDL does not automatically stay discovery, postpone rulings on pending motions, or generally suspend further proceedings in the court in which the action was filed."). In deciding between these options, the Court can consider, among other things, the universality of the issues and "whether it would serve judicial economy to have the questions resolved by a single court." *Id.* However, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [Multidistrict Panel] has transferred the case. . . ." *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001).

    This Court has the authority to stay this case. Even though this Court has the authority to stay, the question remains whether it is *appropriate* to stay this case in the light of the State's motion to remand. The district court in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044 (E.D. Wis. 2001), established a method, used in a number of jurisdictions, to address competing stay and remand motions in a proceeding which is also the subject of a motion to transfer to the JPML. *See, e.g., Nekritz v. Canary Capital Partners, LLC*, Civ. A. No. 03–5081, 2004 WL 1462035 (D.N.J. 2004) (utilizing the *Meyers* test); *Oregon v. Johnson & Johnson*, No. 11–86-AC, 2011 WL 1347069 (D. Or. Apr. 8, 2011) (same). Although not controlling, the *Meyers* test is instructive here.

EXHIBIT B

Under the *Meyers* test, courts should give at least some consideration to a remand motion by making a "preliminary assessment" of the jurisdictional issue. *Meyers*, 143 F.Supp.2d at 1048; *Oregon*, 2011 WL 1347069, at *3. In the preliminary assessment of jurisdiction, courts should distinguish between easily determinable procedural issues and complex substantive issues. "If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." 143 F.Supp.2d at 1049. When the jurisdictional issues are both difficult and similar or identical to those in cases transferred or among the cases subject to transfer, the court should proceed to consider the merits of the motion to stay. *Id*. The factors to be considered when evaluating the motion to stay include: (1) the interests of judicial economy; (2) the hardship and inequity to the moving party if the action is not stayed, and (3) potential prejudice to the non-moving party. *Id*. (citing *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997)). Even if a stay is warranted, it should last only for a reasonable duration. *Landis*, 299 U.S. at 255.

After careful review of the motion to remand and the notice of removal, the Court concludes that the legal issues surrounding the State's motion to remand are novel and complex. Defendants' notice of removal asserts that the State's claims are governed by CRARA and that the State's request for an injunction conflicts with both the CRARA and the First Amendment (Dkt. No. 2, ¶¶ 7-8). The State's motion to remand counters that such matters are merely federal defenses to state law claims (Dkt. No. 16). In support of removal, defendants cite *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). *Grable* held that federal

6

EXHIBIT B

question jurisdiction exists if a state law claim in the complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. A state law claim raises a federal issue when it involves a dispute over the "validity, construction, or effect" of a federal statute or law. *Id.* at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)).

The instant jurisdictional inquiry requires an expansive review of case law governing the history and application of the *Grable* holding, as well as case law and legislative history governing the scope and application of CRARA. The reviewing court will be required to scrutinize the State's factual and legal allegations to isolate those that implicate CRARA and, thereafter, identify the presence of any federal issues. The extensive briefing in both defendants' notice of removal, the State's motion to remand, and defendants' response to the motion to remand demonstrate the complexity of the jurisdictional issues.

Jurisdictional issues will be similar, if not identical, in the other claims brought by state Attorneys General subject to transfer by the JPML. Defendants assert that the other State Actions are based on "the same, if not absolutely identical, factual allegations," similar legal theories, and similar prayers for relief (Dkt. No. 5). On April 5, 2013, the United States District Court, Middle District of Pennsylvania, entered an order granting defendants' motion to stay the removed state action. *See Commonwealth of Pennsylvania v. Standard & Poor's et.al.*, No. 1:13-cv-605, 2013 WL 1397434 at *4 (M.D. Pa. Apr. 5, 2013). That Court found that: "it would be a waste of judicial resources to proceed with the instant matter when the JPML is considering the consolidation of 17 identical cases. As discussed *supra,* one court should adjudicate the uniform jurisdictional issues presented in these cases as well as any other pre-trial motions to

7

EXHIBIT B

prevent inconsistent judgments on highly complex issues. Denying the stay would result in duplicative motions practice as well as the substantial risk of conflicting decisions among the district courts." *Id.* This Court agrees with the reasoning and conclusion of the Pennsylvania District Court.

The Court further agrees with the Pennsylvania District Court in that "[t]he [State] may suffer temporary prejudice in the form of a delay pending resolution of the motion to transfer, but this temporary inconvenience may ultimately result in significant benefits to plaintiff should the JPML transfer the case. The [State] would have the benefit of coordination with other states in litigating those pretrial matters as well as the protection inherent in a uniform resolution of pretrial issues. Denial of the stay would prejudice the Defendants who would be forced to litigate 16 separate actions simultaneously. The costs and loss of resources associated with such an undertaking are obvious." *Id.* at *5.

The Court received notice that argument will be held May 30, 2013, at a panel hearing. (*In Re Standard & Poor's Rating Agency Litigations*, MDL No. 2446, Dkt. No. 79). The stay will only be in effect until the JPML issues a ruling on transferring the matter and for a short time thereafter. *See Smith v. Life Investors Ins. Co. of Am.,* Civ. A. No. 07–681, 2008 WL 2222325, at *1 (W.D. Pa. May 29, 2008) (the period of delay resulting from a stay is "relatively short, is easily measurable, and is directly tied to a tangible event" when the defendant has already filed a motion to transfer with the JPML). In conclusion, any potential prejudice to the State that results from what is anticipated to be a short period of delay is clearly outweighed by the harm that would result to defendants if the Court did not grant a stay and by considerations of judicial economy.

EXHIBIT B

For good cause shown, defendants' motion to stay proceedings pending transfer to MDL is hereby granted (Dkt. No. 4). This matter is stayed until 30 days after a ruling is made by the JPML on the pending motion to transfer. Because the Court is granting defendants' motion to stay proceedings pending transfer to MDL, the Court denies defendants' request for hearing on the motion (Dkt. No. 24).

* * *

For the foregoing reasons, the motion to stay proceedings pending transfer to MDL filed by defendants McGraw-Hill and S&P is granted (Dkt. No. 4). This matter is stayed until 30 days after a ruling is made by the JPML on the pending motion to transfer.

IT IS SO ORDERED this the 26th day of April, 2013.

*Kristine G. Baker*
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE

EXHIBIT B