### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

| | | |
|---|---|---|
| STATE OF MISSISSIPPI, *ex rel.* JIM HOOD, ATTORNEY GENERAL, | ) ) ) | CASE NO.  3:11-CV-343 HTW-LRA |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE MCGRAW-HILL COMPANIES, INC., STANDARD & POOR'S FINANCIAL SERVICES LLC, MOODY'S CORPORATION AND MOODY'S INVESTORS SERVICE, INC. | ) ) ) ) ) | |
| Defendants. | | |

### S&P DEFENDANTS' RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA SUPPORTING MOTIONS TO REMAND FILED BY STATE ATTORNEYS GENERAL

This response of The McGraw-Hill Companies, Inc.[1] and Standard and Poor's Financial Services LLC (the "S&P Defendants") to the Statement of Interest ("Statement") submitted by the United States Attorney's Office for the Central District of California (Dkt. No. 49) (April 22, 2013), is limited in scope and purpose.  The Statement, a near identical copy of others that have been filed in the related state suits, offers no arguments on the merits that were not otherwise addressed in the S&P Defendants' Supplemental Notice of Removal (Dkt. No. 34), and we do not seek to use the filing of the Statement as a basis for arguing the State of Mississippi's remand

---

[1] As of May 1, 2013, The McGraw-Hill Companies, Inc. was renamed McGraw Hill Financial, Inc.  References to "McGraw-Hill" herein refer to the entity now known as McGraw Hill Financial. Standard & Poor's Financial Services LLC, which was a wholly owned subsidiary of The McGraw-Hill Companies, Inc., continues as a wholly owned subsidiary of McGraw Hill Financial.

motion, noting that discovery requested by the S&P Defendants and briefing on the motion has not yet been completed in this case.

We do, however, comment on two significant omissions from the Statement and one conclusion that may be drawn from the very filing of it.  The omissions are that (a) the Statement fails to articulate the true "interest" of the Department of Justice ("DOJ") as a committed partisan in these cases, not some sort of dispassionate observer; and (b) the Statement fails altogether to comment on or respond to the S&P Defendants' central contention that, as the Statement rephrases it, "either the state-law causes of actions themselves, or the injunctive relief sought by certain of the States as a remedy, would . . . compromise CRARA and the SEC's role under CRARA."  (Statement at 9.)  Most fundamentally, the Statement, which has been or will be filed in all federal courts in which motions to remand have been made, itself demonstrates why these cases should remain in federal court.

1.      When the United States Government, acting under the authority of 28 U.S.C. § 517, files a Statement of Interest in a case in which it is not a party, the least the United States District Court in which the Statement is filed can expect is a full and candid description of what that interest is.  Regrettably, the Statement drafted and submitted to this Court by the United States Attorney's Office for the Central District of California, and signed onto by high ranking officials in the Civil Division of the DOJ, does not do so.

Although the Statement skirts the issue, it was clearly filed because the DOJ is a publicly declared ally of and collaborator with the State of Mississippi with regard to this case.  Although buried at the end of a lengthy footnote (Statement at n.1), the Department concedes that federal and state authorities have worked together in planning and preparing federal and state cases against the S&P Defendants.  Indeed the DOJ's case against the S&P Defendants and the wave

of state cases that followed the next day were the subject of a joint press conference attended by senior officials of the DOJ and many of the state attorneys general.[2]

Instead of addressing the DOJ's actual interest, the Statement conjures up two other "interests," neither one of which is credible.  The Statement first asserts that the "substantial" interest sought to be vindicated by the DOJ is the avoidance of state cases involving "ordinary defensive preemption" being removed to federal court.  (Statement at 2.) We are unaware of any prior particularized interest in that subject by the U.S. Attorneys' Office for the Central District of California or indeed of the Civil Division of the DOJ, and the Statement offers none.  Many civil cases commenced in state courts through the years have been removed to federal courts and been met with motions to remand.  The S&P Defendants' research has uncovered no instance where that procedural move alone led the DOJ to file a Statement of Interest on one side or the other.

The other purported basis for the Government's interest in this case arises out of its own filing of a civil case in the Central District of California against the S&P Defendants under the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.  (Statement at n.2.)  The Statement cites no basis upon which removal of this and 16 other virtually identical cases filed by States could possibly impact the FIRREA case.  In fact, if there is any impact on that case in the Central District of California of the decision as to whether the state-filed cases elsewhere in the nation will be pre-tried together in a single federal court or heard separately in different state courts, it is far more likely to be that the multiplicity

---

[2] Transcript of Press Conference with Attorney General Holder, Associate Attorney General Tony West, Deputy Assistant Attorney General Stuart Delery, Announcement of a Major Financial Fraud Enforcement Action, Washington, D.C. (Feb. 5, 2013), in FED. NEWS SERV. (Feb. 5, 2013).  Attorney General Hood issued a press release on February 5, 2013, commending other states for joining him in litigation against S&P, reflecting the central role Attorney General Hood has played in coordinating the nationwide wave of litigation against S&P threatening the carefully-crafted federal regulatory scheme. *Available at* http://agjimhood.com/index.php/press/releases/attorney_general_hood_applauds_multistate_coalition_challenging_standard_po

of state court cases, with duplicative depositions, conflicting demands for injunctive relief and the like could interfere with the federal case.

2.     Having determined to prepare and file a Statement, it is telling what the Government chose not to speak about.  Beginning on page 5 of the S&P Defendants' Supplemental Notice of Removal, the S&P Defendants emphasized the troubling impact on federal regulation of the economy generally and of nationally recognized statistical rating organizations ("NRSROs") in particular of a coordinated effort by 17 states to impose liability for conduct which is, by its nature, subject to intensive federal regulation.  One example we cited was that of the management of potential conflicts of interest.  In every state litigation, including that of Mississippi, the claim is made that S&P was not "independent" because of such conflicts.  But that subject, we have urged, is an area in which there has been repeated SEC investigation and oversight of a sort that simply cannot be reconciled with potentially conflicting ad hoc determinations of 17 states. On this and related bases, the S&P Defendants argued that these cases "threaten[] not only the 'sound balance' established by Congress in CRARA, but the broader federal interest in the efficient operations of national markets for securities." Therefore, the federal interest here could hardly be greater.

We do not raise this point to reargue it here but simply to observe that on substantive issues such as this, the Statement offered no comment at all.  In fact, in response to the S&P Defendants' central contention that the prospective relief sought in the state actions necessarily would interfere with the SEC's regulation of NRSROs, the Statement is silent.

Indeed, all the Statement offers about this subject is the assertion that the state actions do not "seek injunctive relief premised on any violation by S&P or other credit rating agencies of any federal law."  (Statement at 9.)  But that misses the whole point.   This action (and those of

-4-

the other states) necessarily raises a central federal issue because the supposedly unfair and deceptive practices alleged turn inevitably on establishing that Standard & Poor's[3] conduct—including statements that the SEC requires it to make about issues of independence and conflict of interest—violates federal law. *See, e.g.*, 15 USC § 78o-7(q)(2)(F) (requiring an attestation "affirming that no part of the rating was influenced by any other business activities, that the rating was based solely on the merits of the instruments rated, and that such rating was an independent evaluation of the risks and merits of the instrument.")

Evaluating Standard & Poor's conduct necessarily turns in part on its adherence to the comprehensive federal regulatory scheme governing rating agency conflicts and the SEC's regular review of Standard & Poor's conduct, policies, and procedures. *See, e.g.*, 15 U.S.C. § 78o-7(h)(3)(A) ("The Commission shall issue rules to prevent the sales and marketing considerations of a nationally recognized statistical rating organization from influencing the production of ratings by the nationally recognized statistical rating organization."). Indeed, the SEC has formally deemed the "issuer-pays" model—lying at the very heart of all the state actions—a permissible business model, and has determined that this model may coexist with independence in the issuance of ratings. *See* 17 C.F.R. § 240.17g–5(b)(1); Oversight of Credit Rating Agencies Registered as Nationally Recognized Statistical Rating Organizations, SEC Release No. 34-55857, 72 Fed. Reg. 33, 564, 33,595 (June 5, 2007) (explaining the basis for the regulation). Thus, a basic premise of the state actions, that Standard & Poor's business model presents a conflict of interest that prevents it from being independent and objective, such that the Court should enjoin Standard

---

[3] Standard & Poor's Ratings Services ("Standard & Poor's"), which includes a business unit of Standard & Poor's Financial Services LLC, is registered with the SEC as a nationally recognized statistical rating organization. *See* Order Granting Registration of Standard & Poor's Rating Services as a NRSRO, Exchange Act Release No. 34-56513, 72 Fed. Reg. 55,260, 55,260 (Sept. 24, 2007).

& Poor's conduct, directly challenges the SEC's recognition and acceptance of that model under its regulations.

3.     The very preparation and filing of the Statement in this (and presumably every other federal court in which a motion to remand has been made) tells a story of its own.  If the DOJ has its way, up to 17 different federal judges in eleven different circuits will be asked to make the same legal determination of whether removal of these nearly identical cases is sustainable.  With so many judges obliged to pass on the issue that is, as the United States District Court for the Middle District of Pennsylvania recently concluded, "novel and complex,"[4] chances increase that there will be disagreement, possibly leaving some cases in federal courts while remanding others to state courts.[5]  The United States District Court for the Middle District of Tennessee agreed, explicitly noting:  "[T]he fact that the United States has undertaken to file a comprehensive brief in this case on behalf of all the Attorneys General seeking remand only underscores the possibility that the jurisdictional issues may be complex and present issues that are common to all of the actions that have been filed."[6]  The interests of these cases and the due administration of justice make clear it would be manifestly better for a single federal judge to be chosen by the Multidistrict Panel to decide that question, and accordingly we urge the Court to stay these proceedings until the Panel acts.

---

[4]  *Pennsylvania ex rel. Kane* v. *McGraw-Hill Companies, Inc.*, 2013 WL 1397434, at *3 (M.D. Pa. Apr. 5, 2013) ("After careful review, the court concludes that the legal issues surrounding the Commonwealth's motion to remand are novel and complex.").

[5]  As this Court is aware, the District Court of Connecticut remanded the action filed by the State of Connecticut against the S&P Defendants pursuant to Connecticut's consumer protection statute to state court on April 24, 2013.  *See State of Connecticut* v. *McGraw-Hill Cos. et al.*, Civ. No. 3:13-cv-311 (SRU) (D. Conn. Apr. 24, 2013).  On May 3, 2013, the District Court of Illinois remanded Illinois's action against the S&P Defendants.  *See State of Illinois* v. *McGraw-Hill Cos. et al.*, 1:13-cv-01725 (N.D. Ill. May 3, 2013).

[6]  *Tennessee ex rel. Cooper* v. *McGraw-Hill Companies, Inc.*, 2013 WL 1785512, at *5 (M.D. Tenn. Apr. 25, 2013)

Viewed another way, the DOJ, purely for strategic litigation-related reasons, seeks to impose on the S&P Defendants the risks of litigating the same claims in 17 different courtrooms across the country and, if any succeed, to deal with a patchwork of potentially overlapping and inconsistent injunctions.  This tactically driven position would impose a significant cost not only on the S&P Defendants but on the judicial system as a whole, with no countervailing benefit. Not only will 17 different judges have to address the same allegations but each will be obliged to interpret the same federal standards and, if necessary, seek to attempt to harmonize any judgments and injunctions that may be issued.  The governments that commenced these proceedings, federal and state, proceeded as a multistate coalition, and even held a Press Conference at which federal and state authorities praised each other for their coordinated labors.  All that the S&P Defendants seek at this time is for the relevant judicial authorities to coordinate their own efforts to ensure that these actions be treated in a rational and coordinated manner in one forum where these claims may be entertained in an efficient, uniform and consistent fashion.

Dated: May 6, 2013.

Respectfully submitted,

By: ___/s/ J. Chase Bryan_____
Fred Krutz, MSB #4270
J. Chase Bryan, MSB #9333
Mandie B. Robinson, MSB # 100446
FORMAN PERRY WATKINS KRUTZ &
TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201-4099
Phone: (601) 960-8600
Fax: (601) 960-8613

Floyd Abrams (*pro hac vice*)
S. Penny Windle (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York  10005-1702
(212) 701-3000 (telephone)
(212) 378-2712 (facsimile)

***Attorneys for The McGraw-Hill Companies, Inc.***
***and Standard & Poor's Financial Services LLC***

### CERTIFICATE OF SERVICE

I, J. Chase Bryan, do hereby certify that I have this day served the foregoing pleading via

the Court's electronic filing system, to the following:

Geoffrey Morgan
George W. Neville
Meredith M. Aldridge
Special Assistant Attorneys General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205
gnevi@ago.state.ms.us
gmorg@ago.state.ms.us
maldr@ago.state.ms.us

Blake A. Tyler
775 East Fortification Street
Jackson, MS 39202
btyler@pgtlaw.com

Vaterria Martin
5709 Highway 80 West
Jackson, MS 39209
vmmartin@4martinsatlaw.com

Betsy Alexandra Miller
Kit A. Pierson
Cohen Milstein Sellers & Toll
1100 New York Avenue, NW, Suite 500 West
Washington, DC 20005
bmiller@cohenmilstein.com
kpierson@cohenmilstein.com
***Counsel for Plaintiff, State of Mississippi, ex rel. Jim Hood, Attorney
General***

C. Michael Ellingburg
Daniel Coker Horton & Bell, P.A.
4400 Old Canton Road
Suite 400
Post Office Box 1084
Jackson, MS 39215-1084
mellingburg@danielcoker.com

Joshua M. Rubins
James J. Coster
Glenn C. Edwards
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
jrubins@ssbb.com
jjcoster@ssbb.com

***Attorneys for Moody's Corporation and Moody's Investors Service, Inc.***

This the 6th day of May, 2013.

**___/s/ J. Chase Bryan_____**
J. Chase Bryan